JOSEPH MARKLE, complainant-respondent,

*v.*

LOCAL UNION NO. 641, OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, &c., et al., defendants, and JAMES J. WALSH et al., defendants-appellants.

[Submitted October term, 1941. Decided February 4, 1942.]

*Mr. Isidore Hornstein* (*Mr. Victor Ruskin* and *Mr. Lenard H. Mandel,* of the District of Columbia bar, of counsel), for the complainant-respondent.

*Messrs. Collins & Corbin* (*Mr. Edward A. Markley* and *Mr. Raymond J. Lamb,* of counsel), for the defendants-appellants.

The opinion of the court was delivered by

BROGAN, CHIEF-JUSTICE.

This appeal is from an order of the Court of Chancery adjudging the individuals appellant, Messrs. Gibney, Walsh and Slane, guilty of a civil contempt of that court. The punishment was a fine in each case and an award of counsel fee and costs against them.

These appellants here urge that the Vice-Chancellor was in error in determining that the contempt, if any, was civil rather than criminal. It is also argued that if the matter of the alleged contempt be one that could be classed as civil, still the proofs were not sufficient to make out civil contempt. There are other subordinate arguments. They are on the adjective rather than the substantive side. And because they are grounded upon a postulate that the contempt, if any, was criminal in character, discussion is unnecessary. This case should be determined on the main point.

The background of this case is the following: In May, 1940, a bill of complaint was filed by one Markle charging many derelictions against the officers of Local Union No. 641 of the International Brotherhood of Teamsters, Chauffeurs, &c., and praying that certain individuals, defendant, be directed to account for moneys and properties of the Union; that their liability be determined and enforced; that certain individuals be deposed from their offices in the said Union; that a receiver be appointed; that the books of the Union be turned over to a receiver, and for other relief. Some months thereafter the complainant filed an auxiliary petition in the cause praying that the court appoint an auditor to examine and inspect the books of account and the records. An order was made on May 27th, 1940, referring the matter of auditing and inspecting the books of the said Local to a master in Chancery, who was authorized to employ an accountant to aid him in so doing. The order particularly directed the Local's officials to deliver the books specified to the master *forthwith*. There was an appeal from that order to this court. The order was affirmed (*129 N. J. Eq. 32; 17 All. Rep. (2d) 83*). Thereafter on April 21st, 1941, the respective parties appeared before the master. Counsel for the complainant said that a master's summons had been

served upon the officers of the Union commanding their presence, together with the said books of record, on that day. He then called for the production of the books. The solicitor for the parties summoned asked for a reasonable adjournment, representing to the master that some of the books were in the possession of the Prosecutor of the Pleas of Hudson County, others in New York in the possession of the International (Brotherhood). After some argument as to who was responsible for delay and the like, adjournment was granted until April 29th, 1941. On that date the appellant Gibney appeared before the master and, being sworn, testified that he brought with him the receipt and expense books, as requested; that he did not produce the ledgers, the minute books, the check books and canceled checks or the vouchers against which checks were drawn because they were now not at hand; that on the date of the original order, May 27th, 1940, he did have these records in a safe in his office; that on March 10th, 1941, and up to April 24th, the books were in the hands of the auditor for the International in New York; that they were not returned to the office of the Local until Thursday, April 24th, 1941, although the witness had requested them for the master's hearing on April 21st; and that some time during the night of Friday (April 25th) the safe and cabinet in which these books were placed were broken open and the books stolen.

Following this hearing a petition to adjudge the defendants in contempt was presented to the Vice-Chancellor.

The affidavit attached to the petition shows the various steps in the cause, the service of master's summons and the failure to produce the books. The first counter-affidavit recites that Gibney was served with the master's summons, which was returnable April 7th; that counsel advised him that the matter was adjourned for two weeks; that on the return day there was a further adjournment for a week; that the books in the custody of the International were returned to him on April 24th, for production before the master on April 29th; that some time during the night of April 25th, the day books, collection books and minute books were stolen, together with $150 in cash; that other valuable

personal property lodged in the safe, such as five government bonds, were not taken, nor were certain checks. The affidavit of Walsh said that he did not steal the books and records or remove them and had no part in such action; that he knew nothing about the removal of the records or their destruction, if they were destroyed. Slane says that he had nothing whatever to do with the theft of these records; that if there was a conspiracy to make off with them he had never heard of it.

The learned Vice-Chancellor, upon considering these several affidavits, made an oral summation of the facts, and concluded that the individuals involved were guilty of civil contempt. He supported this conclusion on the fact that the books which he directed be examined by the master "were in the full possession and control of the three defendants twice between the affirmance of the court's order for their production and the alleged robbery, when they could have produced them to the master had they wished to do so." This appraisal of the situation did not take into consideration the conduct of the parties and the method adopted by the complainant's solicitor and the master to follow out and to compel obedience to the court's order. That it was the duty of the appellants to produce the books *forthwith* if they were served with a copy of the court's order of May 27th, 1940, is clear. It does not appear that this order was served upon them. Instead on June 7th, 1940, the master wrote to counsel for defendants and made written demand for the specified books. The letter ends by requesting counsel to "see the proper officers of the defendant (Local No. 641) and direct that these books be delivered to my office." Then follows a notice, dated June 14th, 1940, addressed to Walsh and Gibney to produce the books *forthwith* to the master. But this was not served until June 18th, 1940. The appellant Slane is not mentioned in the notice. Instead of obeying the demand the defendants appealed the order of May 27th, 1940. This, of course, was within their legal rights. Their appeal was unsuccessful. The order of affirmance was entered on February 20th, 1941. Then the master wrote another letter on March 14th, 1941, to counsel for the Union calling for the books on March 21st, 1941. Then followed a summons from

the master, dated March 24th, 1941, directed to all three appellants, calling for the books on April 7th, 1941. When that day arrived a two weeks adjournment was granted, complainant's solicitor consenting. On April 21st, a further adjournment of one week was granted appellants by the master, over the objection of complainant's solicitor. In a counter-affidavit Gibney says he delivered the books to the general auditor of the International, John F. English, upon demand made on or about February 15th, 1941.

Generally speaking, failure to obey an order of this kind, made by a court of competent jurisdiction, is a civil contempt, and the court has power to deal with it. If it were otherwise courts would be powerless to proceed to final decree and orderly process would be paralyzed. But here it does not appear that the order was *ever* served on the appellants. If it has been, and they did not comply, they should have been imprisoned until they were willing to obey. However, instead of service of the order, letters were written and demands were served. Meanwhile the appeal was taken and after the affirmance in this court further demand was made to deliver the books not *forthwith* but on a *certain date*. The rest of the matter has already been discussed.

The court was suspicious of the whole incident but nevertheless said: "I am afraid that the evidence is not strong enough to say that the theft of the books is definitely pinned on them" (*i. e.,* the appellants).

On this state of facts we do not think the petitioners are guilty of a civil contempt. They are either guilty of criminal contempt or they are guiltless in the matter. Rather than obey the order, when first made, assuming they were served with it, they chose to appeal. The force of that order was suspended pending the affirmance of the court's action. However, in February, 1941, the books should have been delivered to the office of the master. They were not. If complainant's counsel had then moved to have the recalcitrants punished (again assuming the order had been served upon them), there would be no question about the individuals being guilty of a civil contempt. When, however, a new summons was prepared, calling for the production of the books at a given time,

that was a departure from the court's order to produce the books "forthwith" which shaped the course of the proceeding. All the parties seem to have acquiesced in the departure from the provision of the court's peremptory order. The master was the court's appointed representative in the matter and he saw fit to issue a summons calling for the books at a definite future time. If the court could find that Messrs. Gibney, Walsh and Slane had any part in the destruction of these records, assuming they were destroyed, it was a criminal contempt and appropriate action should have been taken to vindicate the dignity and power of the court. If, on the other hand, the court was unable to find, as seems to be the case, that these individuals were responsible for the disappearance or destruction of these records, their failure to produce the books did not amount to a criminal contempt, in fact, it was no contempt at all. Under the summons issued by the master they had until April 29th to obey the process and if, through no fault of theirs, the production of the records became an impossibility they should not be punished.

It is no simple matter to determine, in certain cases, whether a contempt be civil or criminal. The line of demarcation is not always clear. The test as revealed in the cases lies in the purpose of the punishment. If the punishment is remedial and tends to coerce the individual to obedience, the contempt is civil. If it be only punitive, *e. g.,* punishment for wrong accomplished, the contempt is criminal. In the latter cases the purpose is to vindicate the authority of the law; in the former to compel obedience. One who is imprisoned for a civil contempt is confined until he is ready to obey, which he may do at any time. The saying has it that he who is guilty of a civil contempt has the keys of his prison in his own pocket (*Re Nevitt, 117 Fed. Rep. 448, 461*). Punishment for civil contempt is intended to afford relief between the parties. Such punishment may be imprisonment or fines, to enforce obedience to the court's orders. As against this, a criminal contempt is essentially a public contempt. The former arises *inter partes* and the punishment is a sanction to compel the *contemnor* to render what is due to another—the latter is criminal and punitive in character.

See *Staley* v. *South Jersey Realty, 83 N. J. Eq. 300; Gompers* v. *Buck's Stove and Repair Co., 221 U. S. 418;* compare *Balk Co-Op Co.* v. *International, &c., Union, 94 N. J. Eq. 780; Thompson* v. *Pennsylvania Railroad Co., 48 N. J. Eq. 105; Jernee* v. *Jernee, 54 N. J. Eq. 657.*

The order adjudging the defendants Gibney, Walsh and Slane guilty of civil contempt is therefore reversed and the matter remanded to the Court of Chancery for such action as will not be inconsistent with the views here expressed.

*For affirmance*—None.

*For reversal*—The CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.