**UNITED STATES of America, Appellee,**

v.

**SPECTRO FOODS CORPORATION, a corporation, et al., Appellants.**

**No. 76–1217.**

United States Court of Appeals, Third Circuit.

Argued May 26, 1976.

Decided Oct. 13, 1976.

Jonathan L. Goldstein, U. S. Atty., James A. Plaisted, Asst. U. S. Atty., Newark, N. J., for appellee.

James Malcolm Williams, Minneapolis, Minn., for appellants.

Before ADAMS and HUNTER, Circuit Judges, and SCHWARTZ, District Judge.*

## OPINION OF THE COURT

MURRAY M. SCHWARTZ, District Judge.

Presently before the Court is an appeal from a Preliminary Injunction secured by the government pursuant to the Federal Food, Drug and Cosmetic Act ("the Act"), 21 U.S.C. § 332(a), and from an Order for Civil Contempt arising out of alleged violations of a Temporary Restraining Order and the Preliminary Injunction. The appellants are Spectro Foods Corporation ("Spectro") and Metamail Food Corporation ("Metamail"), both New Jersey corporations, Ernst O. Moenckmeier, president, and Jeanene Moenckmeier, secretary-treasurer of the two corporations. They manufacture and distribute a product known as "Bitter Food Tablets" which they allegedly market for use in the treatment of cancer. The Complaint alleged that Bitter Food Tablets contain amygdalin [1] which is an "unsafe" "food additive", that the tablets themselves are a "food", a "drug" and a "new drug", and consequently that the defendants were in violation of section 331(a), (d) and (k) by virtue of their manufacture, distribution and holding for sale of an "adulterated food", a "misbranded drug" and an unapproved "new drug".

At the time the complaint was filed on January 19, 1975, the district judge entered a Temporary Restraining Order ("TRO") which restrained the manufacture and distribution of Bitter Food Tablets. At the government's urging that the public safety was jeopardized by the current availability of these tablets, the court further ordered

Spectro to recall all previously distributed tablets by January 23. The next procedural development was an ex parte hearing held on Saturday, January 24.[2] The result of the January 24 hearing was the issuance of an order to show cause why defendants should not be held in contempt for failure to comply with the recall order.

A hearing was held on January 28 to determine whether a preliminary injunction should issue and whether defendants should be held in contempt for violation of the TRO. At that time, a compliance schedule was set up and the contempt matter held in abeyance. The district judge also made findings of fact and conclusions of law and on January 29, he issued a preliminary injunction, the scope of which is contested in this appeal. The Preliminary Injunction not only incorporated the restraints on manufacture and distribution and the recall order of the TRO, but also restrained the distribution of any food additive or drug in violation of the Federal Food, Drug and Cosmetic Act. The court added further provisions which, in effect, ordered the FDA to supervise and control the conduct of defendants' business.

On February 9, the government, having concluded that the defendants had defaulted on the agreed upon compliance schedule, moved for a second order to show cause why a contempt order should not issue. At a hearing on February 17, the corporate defendants, Spectro and Metamail, were found in contempt for non-compliance with the recall order contained in the TRO and the Preliminary Injunction, and on the following day the district judge issued an "Order for Civil Contempt."

The defendants responded on February 20 by filing notice of this appeal from the TRO, the Preliminary Injunction and the Order for Civil Contempt. On February 27, a judge of this court denied a stay of these three orders.

---

* Honorable Murray M. Schwartz, District of Delaware, sitting by designation.

1. Also known as Vitamin B–17 or laetrile.

2. Defendants' attorneys were notified of the January 24 hearing on the previous day when the government's initial request for a show cause order was denied as being premature.

## I. JURISDICTION OF THE REVIEWING COURT

■ The Preliminary Injunction is a reviewable interlocutory order under the jurisdiction conferred by 28 U.S.C. § 1292(a)(1). Although an order of civil contempt is not ordinarily appealable,[3] one who is a party may appeal from a civil contempt order in connection with some other appealable order, including a preliminary injunction.[4] Consequently, the Court has jurisdiction over the appeal from the Order for Civil Contempt.[5]

■ A TRO is not an injunction and consequently is not an appealable order.[6] Further, any purported notice of appeal from the TRO was not timely filed[7] and the TRO had, by its terms, expired prior to the appeal. The Court therefore need not consider whether the provisions of the TRO which did more than merely temporarily restrain defendants converted it into a form of an interlocutory injunction independently reviewable under 28 U.S.C. § 1292(a)(1). The contempt order, however, does purport to be based in part on defendants' non-compliance with the TRO.[8] Although this Court has no jurisdiction to entertain an appeal from the TRO, the validity of the TRO must nonetheless be examined for the limited purpose of our review of the Order for Civil Contempt[9] which the district court issued because of the defendants' failure to comply with the recall provisions of the TRO and Preliminary Injunction.[10]

## II. VALIDITY AND SCOPE OF THE PRELIMINARY INJUNCTION

Defendants have alleged a plethora of procedural defects in the district court proceedings. Most of these are wholly without merit, and the remainder, though in some respects disturbing, do not warrant reversal of the entire order granting the Preliminary Injunction. However, because several provisions of the Preliminary Injunction are far broader than the record justifies and others exceed the permissible scope of interlocutory relief, some portions of the Preliminary Injunction are invalid.

■ The prohibition of the manufacture and distribution of the Bitter Food Tablets or other amygdalin-containing articles in parts I and II of the Preliminary Injunction (and parts I and II of the TRO) are unobjectionable. The FDA affidavits indicated that amygdalin is a food additive not on the list of additives generally recognized as safe

3. *Fox v. Capital Co.,* 299 U.S. 105, 107, 57 S.Ct. 57, 81 L.Ed. 67 (1936); *International Business Machines v. United States,* 493 F.2d 112, 114–15 (2d Cir. 1973), *cert denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); 9 J. Moore, Federal Practice ¶ 110.13[4] at 167 (2d ed. 1975).

4. *Emery Air Freight Corp. v. Local Union 295,* 449 F.2d 586, 590 (2d Cir. 1971), *cert. denied,* 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1974); *Hyde Construction Co. v. Koehring Co.,* 348 F.2d 643, 647 (10th Cir. 1965), *rev'd on other grounds,* 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966); *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.,* 86 F.2d 727 (2d Cir. 1936) (per curiam); Moore, *supra.*

5. The Court therefore need not decide whether the contempt order is in actuality at least partially for criminal contempt, and thus independently reviewable as a final appealable order under 28 U.S.C. § 1291. *Union Tool Co. v. Wilson,* 259 U.S. 107, 111, 42 S.Ct. 427, 66 L.Ed. 848 (1922); *International Business Machines, supra*; Moore, *supra.* See discussion *infra* at 1182.

6. *Austin v. Altman,* 332 F.2d 273 (2d Cir. 1964); *Pennsylvania Motor Truck Ass'n v. Port of Philadelphia Marine Terminal Ass'n,* 276 F.2d 931 (3d Cir. 1960) (per curiam); Moore, *supra,* at ¶ 110.20[5].

7. The thirty days in which to file a notice of appeal expired on February 18. Fed.R.App.P. 4.

8. The Order for Civil Contempt expressly recites it is predicated upon failure to obey the recall order provisions of both the TRO and Preliminary Injunction. Doc. 67.

9. *Emery Air Freight Corp. v. Local Union 295, supra; Hyde Construction Co. v. Koehring Co.,* 388 F.2d 501, 510–11 (10th Cir. 1968), *cert. denied,* 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419. Compare *Bethlehem Mines Corp. v. United Mine Workers of America,* 476 F.2d 860, 865 (3d Cir. 1973) in which this Court declined to pass upon the validity of a civil contempt order absent an appeal from the underlying injunction.

10. See Doc. 67.

**1180**

("GRAS") and is a new drug for which no new drug application is on file. Other affidavits concerning defendants' manufacture and distribution of the Bitter Food Tablets provided a sufficient basis for the district court's preliminary conclusions that defendants violated 21 U.S.C. § 331(a), (d) and (k) by virtue of their manufacture, distribution and holding for sale of Bitter Food Tablets.[11] Parts I and II of the TRO and the Preliminary Injunction are properly tailored to enjoin these particular violations of the Act.

 The restraints in parts III and IV of the Preliminary Injunction are far broader than those in parts I and II. While parts I and II are limited to restraints on the manufacture and distribution of Bitter Food Tablets and other amygdalin-containing articles, parts III and IV prohibit the distribution of *any* article of food containing a food additive not recognized as safe or any new drug for which no new drug approval application has been filed. This broad injunctive restraint was issued notwithstanding that the Court had no evidence concerning distribution by defendants of any unsafe food additive or unapproved new drug other than the Bitter Food Tablets.

The district courts are invested with discretion to model their orders to fit the exigencies of the particular case,[12] and have the power to enjoin related unlawful acts which may fairly be anticipated from the defendants' conduct in the past,[13] but a decree cannot enjoin conduct about which there has been no complaint.[14] All the alleged violations here stemmed from the manufacture and distribution of a single item. There was no evidence of record from which the district court could fairly have anticipated that defendants would distribute other substances in violation of the Act, nor did the court make any such findings. The use of the broad injunctive language on so scant a record constitutes error. Parts III and IV of the Preliminary Injunction will be vacated.

The primary controversy and that which led to issuance of the contempt order centers upon part V of the Preliminary Injunction and part III of the TRO. Those provisions employ identical language and encompass the recall order directing defendants to:

(a) notify an FDA representative of the location and amount of all stocks of Bitter Food Tablets, amygdalin and associated labeling;

(b) notify all recipients of the Bitter Food Tablets to return them to defendants;

(c) provide an FDA representative with a copy of said notice and a list of all persons to whom the Bitter Food Tablets had been distributed;

(d) obtain statements from each recipient of the Bitter Food Tablets as to amount of the article received, the amount returned, and disposition of that which was not returned; and

---

11. 21 U.S.C. § 331(a) prohibits, *inter alia*, distribution into interstate commerce any adulterated food (the tablets, containing the "unsafe" food additive) or any misbranded drug (the tablets, without the requisite labeling). 21 U.S.C. § 331(d) prohibits, *inter alia*, distribution into interstate commerce of any new drug for which no new drug application has been filed or approved in violation of § 355. 21 U.S.C. § 331(k) prohibits, *inter alia*, the doing of any act which results in an article of food or drug being adulterated or misbranded while being held for sale after shipment in interstate commerce.

12. *International Salt Co. v. United States,* 332 U.S. 392, 400–01, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

13. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 132–33, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *NLRB v. Express Publishing Co.,* 312 U.S. 426, 435–36, 61 S.Ct. 693, 85 L.Ed. 930 (1941).

14. *Hartford-Empire Co. v. United States,* 323 U.S. 386, 409–10, 65 S.Ct. 373, 89 L.Ed. 322 (1945); *NLRB v. Express Publishing Co., supra; New York N.H. & H.R. Co. v. ICC,* 200 U.S. 361, 404, 26 S.Ct. 272, 50 L.Ed. 515 (1906); *Swift & Co. v. United States,* 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (1905).

(e) make copies of the customer statements available to an FDA representative.

Those aspects of the recall order which culminated in the Order for Civil Contempt did not merely operate to restrain further violations of the Act by defendants, for, according to the record, they involved items no longer in defendants' possession.[15] Neither did the recall order operate pendente lite to preserve the status quo, i. e., "the last actual uncontested status which preceded the pending controversy."[16] Rather the recall provision functioned as though it were "actually a discovery provision," as the district court characterized it,[17] enabling the government to locate various quantities of the tablets for seizure pursuant to 21 U.S.C. § 334.[18]

■ The power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.[19] Parts I and II of the Preliminary Injunction are based on the alleged violation of 21 U.S.C. § 331(a)(d)(k), and therefore do not require a showing of immediate and irreparable injury. On the other hand, the recall order does not address a particular violation of the Act from which injury may be presumed and thus there must be an independent showing of irreparable harm to warrant its issuance.[20]

The district court made no finding that the public would be irreparably harmed absent a recall order. In fact, the court made no specific findings of irreparable injury other than that resulting from defendants' violation of the Act itself. In this circumstance it was error for the court to issue an interlocutory mandatory injunction unsupported by specific findings of irreparable injury.[21] Cf. *A. O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976).

■ From this discussion of part V of the Preliminary Injunction and part III of the TRO [22] it is equally apparent that the order granting the FDA supervisory power over the conduct of defendants' business was wholly unwarranted. The order forbids defendants from distributing or holding for sale any article of food or drug without the FDA approval, requires the FDA to sequester defendants' inventory and their entire stock of raw materials and to destroy all items which it does not "approve". Further, the decree orders defendants to abide by the decisions of the FDA representative, to compensate the government for the cost of this supervision, and generally enjoins defendants from selling or

---

**15.** Defendants notified an FDA representative of the location of their stocks of the tablets and related materials. The contempt order was based only on violations of parts (b) through (e) of the recall order.

**16.** *Warner Bros. Pictures, Inc. v. Gittone*, 110 F.2d 292, 293 (3d Cir. 1940).

**17.** January 19, Tr. 15. See also January 24, Tr. 7–11; February 17, Tr. 101–102.

**18.** January 19, Tr. 10–13.

**19.** *Dorfmann v. Boozer*, 134 U.S.App.D.C. 272, 414 F.2d 1168, 1173 (1969); *O'Malley v. Chrysler Corp.*, 160 F.2d 35, 36 (7th Cir. 1947). Cf. *Warner Bros. Pictures v. Gittone, supra*, which suggests that an interlocutory mandatory injunction is never appropriate unless it operates to preserve or restore the status quo.

**20.** Compare *United States v. Diapulse Corp. of America*, 457 F.2d 25, 28 (2d Cir. 1972).

**21.** The Court has no need to decide the question (not briefed by the parties) whether the Act authorizes a recall order under any circumstances. *See United States v. C.E.B. Products, Inc.*, 380 F.Supp. 664 (N.D.Ill.1974), suggesting that the Act confers no such power.

The Court also has no reason to determine under what circumstances, if any, a discovery order may be issued on a showing of irreparable injury without a hearing or without an initial attempt at securing discovery pursuant to the Federal Rules of Civil Procedure which are fully applicable to actions under 21 U.S.C. § 332(a). *United States v. Wilson-Williams, Inc.*, 24 F.R.D. 468 (S.D.N.Y.1959).

[Mr. Williams: ". . . But my clients have had no hearing at all.

The Court: You don't need a hearing for discovery. If there is a complaint on file the Plaintiff is entitled to information that is called for. The Court has ordered the Defendants to provide it. They have refused to provide it. That is the contempt." February 17, Tr. 101–102.]

**22.** See pp. 1180–1181 *supra*.

disposing of any article of food or drug in violation of the Act or the laws of any State or Territory.

This far-reaching order *might* appropriately be included in a permanent injunction issued after a full evidentiary hearing disclosed a history of repetitive, flagrant violations, suggesting a real danger of recurrent evasions of a more carefully drawn order.[23] However, in the context of this interlocutory order, based on a narrow showing by affidavit, the government's request for such a broad order can only be characterized as gross overreaching. In the absence of any relevant findings of irreparable injury the court's acquiescence evidenced by the grant of the order constitutes both an abuse of its discretion and "a serious mistake in considering the proof". *Cf. A. O. Smith Corp. v. FTC, supra,* 530 F.2d at 525.

### III. *THE "ORDER FOR CIVIL CONTEMPT"*

The "Order for Civil Contempt" recites that it was issued when the defendant corporations disobeyed the recall order embodied in the TRO and the Preliminary Injunction. Since these recall provisions will be vacated, the Court must now consider whether the "Order for Civil Contempt" should continue in effect.

■ While a defendant may be punished for criminal contempt for failing to obey an injunction which is later set aside,[24] the same result does not follow in a civil contempt proceeding.[25] The difference in treatment follows from the fact that whereas a criminal contempt order is punitive—to vindicate the authority of the court, the purpose of a civil contempt order is remedial—to coerce compliance with the injunction or recompense a party for losses caused by noncompliance.[26] The right to remedial relief disappears when it is determined that an injunction was issued erroneously.[27] Therefore, to the extent the contempt order is correctly described as a "civil contempt," it falls with the vacation of the recall order on which it was based.

■ Although the district court characterized its order as one for civil contempt, appellate courts must look to the substance of the order rather than the form to determine whether the contempt is civil or criminal in light of the nature and purpose of the sanction.[28] The fact that a defendant can purge himself of the contempt and avoid the sanctions indicates that the purpose is coercive and the contempt order is civil.[29] Sanctions which are imposed unconditionally strongly suggest a punitive purpose and a criminal contempt. However, an unconditional fine paid to the opposing party is a compensatory civil contempt.[30]

■ In its "Order for Civil Contempt" the district court adjudged the two corporations in contempt and fined them each $5000 plus $500 for each day they continue to violate the recall provisions of the TRO and the Preliminary Injunction. The continuing $500 per day fine is unquestionably

**23.** *Cf. United States v. Lit Drug Co.,* 333 F.Supp. 990, 998 (D.N.J.1971).

**24.** *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers,* 330 U.S. 258, 294, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

**25.** *United States v. United Mine Workers, supra,* at 295, 67 S.Ct. 677; *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 909–10 (3d Cir. 1975), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

**26.** *See Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 448, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

**27.** *United States v. United Mine Workers, supra,* 330 U.S. at 295, 67 S.Ct. 677.

**28.** *Shillitani v. United States,* 384 U.S. 364, 368–70, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Cromaglass Corp. v. Ferm,* 500 F.2d 601, 604 (3d Cir. 1974); *Southern Railway Co. v. Lanham,* 403 F.2d 119, 124 (5th Cir. 1968).

**29.** *In re Grand Jury Impaneled January 21, 1975,* 529 F.2d 543, 550–51 (3d Cir. 1976) *cert. denied,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976); *Fireman's Fund Insurance Co. v. Myers,* 439 F.2d 834, 837–38 (3d Cir. 1971).

**30.** *See McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Cromaglass Corp. v. Ferm, supra.*

for civil contempt: it is clearly coercive since it can be avoided by compliance. The flat $5000 fine, however, seems more in the nature of punishment for past violations of the court's orders, and there is abundant evidence that the court's purpose in imposing it was punitive rather than coercive or remedial.[31] Nevertheless, in light of the considerations discussed below we vacate the "Order for Civil Contempt" in its entirety.

First, it is possible that there was a remedial purpose underlying the $5000 fine. The fine is payable to plaintiffs, the government, and could be viewed as compensation for their efforts in monitoring defendants' (non)compliance with the TRO and the Preliminary Injunction. Alternatively the flat fine might have been coercive, to emphasize that the court fully intended to impose the daily fine in the event of further non-compliance, thus increasing the *in terrorem* effect of the daily fine.

■ Second, even if the fine were for criminal contempt, it could have been imposed only in a criminal contempt proceeding[32] conducted in accordance with the Criminal Code, 18 U.S.C. §§ 401, 402, and Rule 42 of the Federal Rules of Criminal Procedure, as well as the constitutional provisions relevant to criminal trials. In the instant matter due process was not satisfied in the form of notice to defendants of a pending criminal contempt charge including describing it as such as required by F.R. Cr.P. 42(b).[33]

In the matter of criminal contempt, as in all criminal cases, due process also requires that a defendant is presumed innocent and punishment can only be imposed after the government has met its burden of establishing defendants' guilt beyond a reasonable doubt.[34] Yet on several occasions the district judge indicated that defendants' guilt had been established when the first Order to Show Cause was issued and that defendants thereafter had the burden of proving their innocence of the contempt charges.[35]

**31.** The Order for Civil Contempt states that the corporations were "adjudged to be in civil contempt for wilfully and contumaciously failing to perform the acts required of them." The court made several statements at the February 17 hearing which further indicated that the purpose of the fine was to vindicate its authority rather than to coerce compliance. Tr. 81, 118, 162.

**32.** *Gompers v. Bucks Stove & Range Co., supra,* 221 U.S. at 444, 31 S.Ct. 492.

**33.** *Cf. Mitchell v. Fiore,* 470 F.2d 1149, 1153 (3d Cir. 1972), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973). Although the show cause orders issued on January 24 and February 9 might have provided adequate notice in themselves, the government made clear at the hearing on January 28 that it was seeking only an order of civil contempt to ensure compliance and the court seemed to be in accord. (January 28, Tr. 88, 91–93.) At that time the Court was considering confinement of the Moenckmeiers until they complied with both the TRO and the subpoenas. It was apparent that on February 17 the government considered civil contempt to be the sole matter at issue. (February 17, Tr. 7, 89.) The district court apparently thought it was only considering and ruling on a civil contempt charge since its order is titled "Order for Civil Contempt." (Doc. 67.) Defendants therefore were never put on notice that they had been charged with committing a criminal contempt.

**34.** *Mullaney v. Wilbur,* 421 U.S. 684, 699–701, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**35.** For example, the judge declared during the January 28 hearing that guilt had been established when the first Order to Show Cause was issued at the *ex parte* hearing on January 24, ruling that defendants now had the burden of proving their compliance with TRO. (January 28, Tr. 90.) The Court then indicated it "was about to rule that the defendants should be committed until they complied . . . but in view of the representations made [by counsel as to a compliance schedule] I am going to allow the defendant corporations and their officers an opportunity to purge themselves." (January 28, Tr. 108.) A second Order to Show Cause having been obtained on February 9, the Court held a hearing on February 17. When the Court indicated its intention "to rule on the contempt issue which was reserved on January 28," Mr. Williams, who had just recently entered the case, stated that he was not prepared to go forward with the hearing. The Court replied that a hearing had been held on January 28, and that it was "quite evident at that hearing that there was deliberate resistance to the provisions of that order, and a complete unwillingness to comply with it." (February 17, Tr. 95.) The Court then found the defendant corporations guilty of contempt. Although the Court stated that guilt was "established beyond

Insofar as defendants were convicted of criminal contempt, adherence to procedural due process requires reversal of the conviction.

The Order for Civil Contempt and the Preliminary Injunction, except for parts I and II, will be vacated and the matter remanded for further proceedings consistent with this opinion.

any reasonable doubt," (February 17, Tr. 96) the three post-January 28 affidavits (Docs. 43, 44 and 62) do not measure up to that standard.