CITY OF PHILADELPHIA, PLAINTIFF, v. BURDETTE J. WHEELER, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided December 13, 1983.

*Nicholas Panarella, Jr.,* for plaintiff.
*James E. Rafferty,* for defendant.

HAINES, A.J.S.C.

The City of Philadelphia obtained a Pennsylvania judgment against the defendant, Burdette J. Wheeler, for unpaid city

wage taxes, together with interest, costs and penalties. It seeks the enforcement of that judgment here. Its action is subject to the provisions of *L.*1983, *c.* 350, effective September 29, 1983 (the act), an enactment which it challenges as unconstitutional. The act, except for the provisions of its first section, *is* unquestionably unconstitutional and on several grounds.

## A. Section 1 of the Act

Section 1 sets forth recognized due process requirements relating to the enforcement of foreign judgments. It repeats the language of *N.J.S.A.* 2A:82–4, which the act repeals. This section is not challenged here; it survives by virtue of the severability clause in section 6 of the act.

## B. Section 2 of the act

This section provides:

In any proceeding upon a foreign judgment, including a judgment of any court out of this State, the plaintiff, or person seeking to enforce the judgment, shall have the burden of proving that the requirements, statutory and otherwise, of the foreign jurisdiction have been met, conferring jurisdiction of the subject matter of the foreign proceeding on the foreign court or tribunal and over the defendant or person sought to be affected by the judgment.

The Full Faith and Credit Clause is found in Art. IV, § 1 of the United States Constitution. It states:

Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

When suit is brought on a foreign judgment, the Full Faith and Credit Clause permits inquiry only into the jurisdiction of the foreign court; the existence of the judgment is conclusive as to the validity of all other aspects of the proceedings which led to its entry. *Zieper v. Zieper,* 14 *N.J.* 551, 566–567 (1954). By virtue of the clause, jurisdiction over the subject matter and the person, however, is presumed; the burden of proving the absence of that jurisdiction is upon she who challenges the judgment. *Ibid.; Esenwein v. Commonwealth,* 325 *U.S.* 279, 280–

281, 65 *S.Ct.* 1118, 1119, 89 *L.Ed.* 1608, 1610 (1945); *Williams v. North Carolina,* 325 *U.S.* 226, 234, 65 *S.Ct.* 1092, 1097, 89 *L.Ed.* 1577 (1945); *Adam v. Saenger,* 303 *U.S.* 59, 62, 58 *S.Ct.* 454, 456, 82 *L.Ed.* 649 (1938). Section 2 of the act ignores these well-established principles and shifts the burden of proving jurisdiction to the party who seeks to enforce the judgment. It therefore violates the requirements of the Full Faith and Credit Clause.

C. Section 3 of the act

■ This section provides:

> In any proceeding upon a foreign judgment, including a judgment of any court out of this State, the plaintiff, or person seeking to enforce the judgment shall have the burden of proving that the underlying cause of action which gave rise to the awarding of the foreign judgment was commenced in the foreign jurisdiction within the period required by statute of this State for the commencement of a like action in this State.

This provision would deny enforcement of the city's judgment, if the tax claim which produced it had not been sued upon in Pennsylvania within the period of the time fixed by *New Jersey's* statute of limitations. The condition is constitutionally impermissible. It violates the Full Faith and Credit Clause. Section 3 shifts the burden of proving the validity of the judgment to the plaintiff, which, as in the case of section 2 above, is wrong. It requires the courts of New Jersey to look behind the Pennsylvania judgment to see whether the City of Philadelphia, in bringing its action in Pennsylvania, complied with the requirements of New Jersey law. This is also wrong. The Full Faith and Credit Clause permits an inquiry into jurisdiction only. The question of compliance with our statute of limitations does not address jurisdiction.

A closely analogous issue was addressed in *Roche v. McDonald,* 275 *U.S.* 449, 48 *S.Ct.* 142, 72 *L.Ed.* 365 (1928). In that case a judgment was obtained against McDonald in the State of Washington and assigned to Roche. Roche then sued McDonald in Oregon on the Washington judgment, thereby obtaining an Oregon judgment against McDonald. Washington had a statute extinguishing judgments in six years and prohibiting their ex-

tension beyond that period of time. Nevertheless, Roche brought suit on his Oregon judgment against McDonald when that judgment was over six years old. The Washington Supreme Court dismissed the suit, relying on its six year statute of limitations. The United States Supreme Court reversed, holding that the Full Faith and Credit Clause required recognition by Washington of the Oregon judgment. It said:

> This rule is applicable where a judgment in one State is based upon a cause of action which arose in the State in which it is sought to be enforced, as well as in other cases; and the judgment, if valid where rendered, must be enforced in such other State although repugnant to its own statutes. [275 *U.S.* at 452, 48 *S.Ct.* at 143]

*Christmas v. Russell,* 5 *Wall.* 290, 18 *L.Ed.* 475 (1866), presents circumstances even closer to those considered here. The State of Mississippi had a statute which provided that no action could be maintained on any foreign judgment rendered against a Mississippi resident where the Mississippi statute of limitations would have barred the cause of action if the suit had been brought there. The court, holding the statute to be unconstitutional, said that a Kentucky judgment was enforceable in Mississippi notwithstanding the statute. Since that judgment was valid in Kentucky and conclusive between the parties there, it was not competent for any other state to authorize its courts to open the merits and review the cause, or to provide that such a judgment should not receive the same full faith and credit to which it was entitled in the courts of Kentucky. *See also Magnolia Petroleum Co. v. Hunt,* 320 *U.S.* 430, 443, 64 *S.Ct.* 208, 216, 88 *L.Ed.* 149 (1943), *reh'g den.* 321 *U.S.* 801, 64 *S.Ct.* 483, 88 *L.Ed.* 1088 (1943); *Restatement, Conflicts of Law 2d* § 118(1) (1971).

D.  *Section 4 of the act*

◼  This section provides:

> A court, in any proceeding upon a foreign judgment, including a judgment of any court out of this State, may award judgment for the plaintiff, or person seeking to effect the judgment, including any interest on the judgment, but shall not include as a part thereof any penalty, whether of a penal nature or otherwise, imposed in connection with the foreign judgment.

Since 1825, when Chief Justice Marshall made what was referred to in *Philadelphia v. Austin,* 86 *N.J.* 55, 58 (1981), as a "laconic statement," namely, that "[t]he courts of no country execute the penal laws of another," *The Antelope,* 23 *U.S.* (10 *Wheat.*) 66, 123, 6 *L.Ed.* 268 (1825), the validity of that statement has been argued in the courts. The argument continues here. Its progress through the courts has been traced in *Philadelphia v. Austin, supra,* and *Philadelphia v. Smith,* 82 *N.J.* 429 (1980). This history need not be repeated. It is however important to note that neither *Austin* nor *Smith* decided the central question, *i.e.,* whether our courts are required by the Full Faith and Credit Clause to enforce a foreign judgment based upon a penalty. *Austin* suggested that the $300 penalty assessed by Philadelphia for the failure to file income tax returns "may be necessary to compensate Philadelphia for its expense in collecting delinquent taxes." 86 *N.J.* at 62. It concluded that "the purpose of the $300 penalty is not to punish, but to grant a civil remedy to the City in its role as tax collector." *Ibid.* The Court then held that the Full Faith and Credit Clause required enforcement of the Pennsylvania judgment. In doing so, it distinguished "a purely penal law and a tax law with penal provisions," expressly leaving unresolved the question of enforcement of nontax judgments involving penalties. In *Smith* the Court considered enforcement of a Pennsylvania judgment for Philadelphia wage taxes, costs and interest, plus a 1% monthly penalty for nonpayment of taxes, assessed in accordance with the Philadelphia wage tax ordinance. The judgment, including penalties, was enforced by reason of the Full Faith and Credit Clause. The Court said that the penalty was not a punishment but a "surcharge designed to compensate Philadelphia for its trouble and expense in collecting delinquent taxes." 82 *N.J.* at 433. The question of whether Chief Justice Marshall's penal exception is still in existence was "set aside" for another day. The issue, while obviously narrowed by the *Austin* and *Smith* decisions, has therefore not been decided in New Jersey. Furthermore, the United States Supreme Court

has not handed down any decisive opinion on the subject. *Restatement, Conflicts of Law 2d,* § 120, Comment d (1971).

The lack of any definitive decision concerning the penal exception presents no problem here, however. *Austin* and *Smith* hold that the Full Faith and Credit Clause requires New Jersey to enforce Philadelphia wage tax judgments including judgments for penalties assessed by virtue of its wage tax ordinance. The "penalties" are not truly penal but are compensatory. Section 4 of the act provides that any New Jersey judgment entered in a suit upon a Philadelphia judgment for wage taxes "shall not include as a part thereof any penalty, whether of a penal nature or otherwise." This provision is unconstitutional. It violates the Full Faith and Credit Clause as interpreted by *Austin* and *Smith.*

E.  *Section 7 of the act*

■    This section provides:

As used in this act, "any proceeding upon a foreign judgment, including a judgment of any court out of this State" means a judgment under the Philadelphia Wage and Net Profits Tax Ordinance (City Code Section 19–508).

Thus, Philadelphia wage tax judgments are singled out as the only foreign judgments subject to the provisions of the act. This arrangement violates the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Art. I, par. 1 of the New Jersey Constitution. The basic rule is set forth in *A.D.A. Financial Service Corp. v. State,* 174 *N.J.Super.* 337 (App.Div.1979):

The essence of the Equal Protection Clause under the Fourteenth Amendment of the Federal Constitution, as well as the sometimes even more demanding equal protection guarantees implied in our State Constitution, is that persons situated alike should be treated alike. Both the state and federal guarantees seek to ensure equality of right by forbidding arbitrary discrimination between persons similarly situated. [At 347]

Equal protection analysis requires a three tier approach under both constitutions. The approach is summarized in *U.S.A. Chamber of Commerce v. State,* 89 *N.J.* 131 (1982):

> When the legislation regulates "fundamental rights" or "suspect classes," it will be subject to "strict scrutiny" and the state will be required to demonstrate (1) that a compelling need justifies the legislation and (2) that no less restrictive alternative will accomplish the state objective. At the other end of the spectrum is the rational basis test. Under this standard of review a court inquires first whether there is a conceivable legitimate state objective and second whether the classification selected is rationally related to that objective. In considering the second, categories need not be formed with mathematical nicety and legislatures may attack a problem one step at a time.
>
> The third approach ... is an intermediate one. The appropriateness of intermediate scrutiny depends upon the character of the legislative classification or the nature of the rights affected by the statutory scheme. It may be that a "semi-suspect" classification, like gender, is implicated or that a fundamental right is being substantially affected in an indirect manner. In these circumstances the legislative classification must serve important governmental objectives and must be substantially related to achievement of those objectives. [At 157–158; citations omitted]

■ The enforcement of foreign judgments does not involve "fundamental rights" such as the right to vote or the right to interstate travel and foreign judgment creditors are not within a "suspect class" such as one determined by race, alienage or national origin. *Wiesenfeld v. Sec. of Health, Ed. & Welfare,* 367 *F.Supp.* 981 (D.C.N.J.1973). Consequently, the strict scrutiny test does not apply. No "semi-suspect" classification or indirect implication of a fundamental right appears which invites the intermediate approach to the equal protection analysis. Consequently, the rational basis test applies.

The statute does not pass this test. By inhibiting a foreign jurisdiction's collection of taxes it serves no legitimate state objective, thereby failing the first step of the test. Our Supreme Court made this clear in *Philadelphia v. Austin, supra* when it said:

> Underlying the extrastate enforcement of judgments for unpaid taxes, interest and penalties is the recognition that taxes are the lifeblood of government, the vital force needed to sustain the public interest. Stated otherwise, 'Taxes are what we pay for civilized society.' [citation omitted] When one taxpayer fails to bear his or her fair share, the burden becomes heavier on other taxpayers. The inability to enforce a tax obligation in another state increases the burden on citizens of the taxing state. Tax evasion does not reduce the cost of government; it merely shifts the cost to others. [86 *N.J.* at 65–66]

The second step in the test, whether the classification selected is rationally related to a conceivably legitimate state objection, depends upon the existence of that objective. Here, none exists and the second step of the test is also failed.