242 N.J. Super. 699 (1990)
577 A.2d 1333
STATE OF NEW YORK AND THOMAS C. JORLING, ET AL., PLAINTIFFS,
v.
FRANK SACCO, LILLIAN SACCO, MATERIAL TRANSPORT SERVICE AND DART CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided May 10, 1990.
*700 Joseph R. Fischer, for plaintiffs (Clemente, Strenk & Kiernan, attorneys).
Alan Liebowitz, for defendants (Liebowitz & Liebowitz, attorneys).
LAWRENCE D. SMITH, J.S.C.
The essential issue addressed in this opinion is whether the "penal exception" to the Full Faith and Credit Clause of the United States Constitution precludes enforcement of a series of New York judgements which imposed substantial sanctions on defendants for contempt of court based on their failure to comply with an earlier judgement. For the reasons expressed herein, I find the sanctions involved, because they were intended to be coercive rather than punitive, are entitled to full faith and credit.
Litigation was instituted in New York by the State of New York and Thomas C. Jorling (Commissioner of the New York State Department of Environmental Conservation (DEC)) against Frank Sacco, Lillian Sacco, Material Transport Service, Reynard Barone and Sarkis Khourouzian, all of whom were the owners and operators of a landfill in Tuxedo, New York. The last two named defendants in the New York litigation are not parties to the instant proceeding. The purpose of the action was to secure closure of that landfill. I am informed that Dart Corporation subsequently became involved after it acquired the *701 assets of Material Transport and shortly before the entry of the initial judgement.[1]
Frank Sacco, Lillian Sacco and Material Transport Service all agreed to appear pro se in the New York litigation, although only Frank Sacco subsequently actually appeared at some of the ensuing court proceedings. After a 12-day hearing, a preliminary injunction was issued. Thereafter, a settlement was reached whereby all defendants agreed to voluntarily discontinue the landfill operation. The DEC then sought, in addition, an order directing defendants to post a bond to cover the estimated expenses of such additional testing, monitoring and remedial measures as might be required to provide "maximum protection for the public" in effectuating closure of the landfill. Expert testimony was introduced to show the anticipated and potential costs involved and the court ordered that defendants post a bond or other acceptable security in the amount of 4.5 million dollars to ensure the expenses of proper and appropriate closure. Judgement was entered on August 25, 1988, the court directing that a bond be posted within ten days.
Defendants in the present litigation chose neither to post a bond nor to file a timely appeal.[2] The State of New York thereafter secured an order to show cause seeking to impose sanctions based upon defendants' failure to comply with the court's earlier judgement. Defendants were directed to appear for a hearing the purpose of which was styled as a hearing "to punish defendants ... for a contempt of court." The content *702 of the order to show cause noted that the potential "punishment" could "consist of fine or imprisonment, or both, according to law."
All of defendants were served with the order to show cause. On November 3, 1988, Judge Hickman found defendants had "committed the offense" and were "guilty of the misconduct and contempt of court charged against them." He further found that the misconduct of defendants "was calculated to and did actually defeat, impair, impede and prejudice the rights and remedies of the plaintiffs." He fined defendants, prospectively, in the sum of $1,000 a day until such time as the mandated bond or acceptable security was posted. Accumulated fines were later reduced to three separate money judgements, each of which was entered against all of the present defendants. On November 28, 1988, judgement was entered in the sum of $25,000; on February 27, 1989, judgement was entered in the sum of $75,000; on July 9, 1989, judgement was entered in the sum of $124,000.
In this litigation, plaintiffs contend that full faith and credit mandates recognition of New York's monetary judgements. Defendants contend that those judgements are founded on "severe monetary penalties," denominated by defendants as "punishment for failure to post the bond," and that they should not be afforded cognizance because they should be viewed, in legal contemplation, as "penal" in nature.[3] Defendants have not introduced any proofs which would suggest any jurisdictional deficiency associated with the New York proceedings and, therefore, have not sustained their burden of demonstrating an absence of jurisdiction. Philadelphia v. Wheeler, 192 N.J. Super. *703 616, 619, 471 A.2d 821 (Law Div. 1983). See also Landis v. Kolsky, 81 N.J. 430, 435, 409 A.2d 276 (1979). Further, the proofs show proper service at all phases of the New York litigation. Nor have defendants in any fashion attempted to suggest that they did not have the ability to post the bond decreed. Unless the penal exception applies, the New York judgements are entitled to full faith and credit.
Article IV, § 1 of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records and Judicial Proceedings of every other State." The purpose of the Full Faith and Credit Clause is to ensure that a judgement is given the same conclusive effect in every State as in the State in which the judgement originally was rendered. Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 438, 64 S.Ct. 208, 213, 88 L.Ed. 149 (1943); Philadelphia v. Austin, 86 N.J. 55, 58, 429 A.2d 568 (1981). Together with several other constitutional provisions, the Full Faith and Credit Clause subserves the objective of integrating the states as independent sovereigns into a single nation so that a just claim can be enforced in each of the states regardless of its state of origin. City of Philadelphia v. Bauer, 97 N.J. 372, 377, 478 A.2d 773 (1984); Milwaukee Cty. v. M.E. White Co., 296 U.S. 268, 276-277, 56 S.Ct. 229, 233-234, 80 L.Ed. 220, 228 (1935).
The "penal exception" to the Full Faith and Credit Clause has its source in American jurisprudence in a statement made by Chief Justice Marshall in The Antelope, 23 U.S. 66, 123 (10 Wheat.), 6 L.Ed. 268 (1825). In The Antelope, Chief Justice Marshall remarked that "[t]he courts of no country execute the penal laws of another." The penal law exception "applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violations of its statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties." Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 290, 8 S.Ct. 1370, 1374, 32 L.Ed. 239 (1888). See *704 also, Philadelphia v. Austin, supra, 86 N.J. at 59, 429 A.2d 568.
Plaintiffs, relying on City of Philadelphia v. Austin, supra, contend that even if the sanctions imposed by the New York court were penalties, once those penalties were reduced to money judgements, the penal law exception was rendered inapplicable. Austin, as well as Philadelphia v. Smith, 82 N.J. 429, 413 A.2d 952 (1980), involved moderate tax penalties found to be entitled to full faith and credit. The Court viewed those penalties as essentially the functional equivalent of compensation for the government's collection expense. While the Court in Austin did refer to the metamorphosis which occurs when a penalty is reduced to a civil judgement as a change which "diminishes the penal nature of the claim and enhances the enforceability of the judgment under the Full Faith and Credit Clause," 86 N.J. at 61, 429 A.2d 568, the Court specifically differentiated between "a purely penal law and a tax law with penal provisions." Id. at 63, 429 A.2d 568. See also Philadelphia v. Smith, supra, 82 N.J. at 433, 413 A.2d 952. The Court, in Austin, expressly left "unresolved the question of enforcement of nontax judgments involving penalties." Philadelphia v. Wheeler, supra, 192 N.J. Super. at 622, 471 A.2d 821. Hence, Austin does not support the broad proposition espoused by plaintiffs. It would be inappropriate for a trial court to expand upon the scope of the Supreme Court's holding in Austin so as to embrace all judgements when the Supreme Court expressly limited its holding and prior appellate authority is contrary to such an extension. See Alfone v. Sarno, 87 N.J. 99, 106, n. 5, 432 A.2d 857 (1981); cf. Dwyer v. Skyline Aptmts, Inc., 123 N.J. Super. 48, 55, 301 A.2d 463 (App.Div.), aff'd 63 N.J. 577, 311 A.2d 1 (1973).
The more fundamental issue presented is whether the penal exception applies to the type of contempt sanction as was imposed by the New York court. Resolution of that question hinges on the meaning to be accorded to the concept, "penal," together with an analysis of the purpose of the sanction. In *705 Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), the United States Supreme Court set forth "the accepted definition of a penal law" (See Philadelphia v. Austin, supra, 86 N.J. at 59, 429 A.2d 568):
The question whether a statute of one State, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act. [146 U.S. at 673-674, 13 S.Ct. 229-230, 36 L.Ed. at 1127]
See also Loucks v. Standard Oil Co. of New York, 224 N.Y. 99, 120 N.E. 198 (Ct.App. 1918), wherein Judge Cardozo expressed the concept, as follows:
The question is whether it is penal within the rules of private international law. A statute penal in that sense is one that awards a penalty to the State, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. [citations omitted] The purpose must be, not reparation to one aggrieved, but vindication of the public justice. [224 N.Y. at 198, 120 N.E. at 102]
A less opaque, more serviceable, expression of the essence of a penal law was provided by our Supreme Court in Philadelphia v. Austin, supra: "Punishment of a public offense is an essential characteristic of a penal law." 86 N.J. at 60, 429 A.2d 568. A penal law is a "punitive law" intended "to redress a public wrong." Id. at 61, 429 A.2d 568.
Applying that concept, it is clear that the New York judgments, involved in this litigation, are not of the type which fall within the purview of the penal exception to full faith and credit.
Contempt proceedings were initiated under N.Y.Jud.Law § 753 (McKinney 19__).[4] That section, entitled "Power of courts to punish for civil contempts," provides in pertinent part:

*706 A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases:
A party to the action or ... for the non-payment of a sum of money, ordered or adjudged by the court to be paid, in a case where by law execution can not be awarded for the collection of such sum except as otherwise specifically provided by the civil practice law and rules; or for any other disobedience to a lawful mandate of the court.
In N.Y. City Dept. of Env. Prot. v. D.E.C. of State, 519 N.Y.S.2d 539, 513 N.E.2d 706, 70 N.Y.2d 233 (Ct.App. 1987), the court differentiated between criminal and civil contempts and defined the purpose of civil contempts:
Although the same act may be punishable as both a civil and a criminal contempt, the two types of contempt serve separate and distinct purposes. A civil contempt is one where the rights of an individual have been harmed by the contemnor's failure to obey a court order. (citation omitted). Any penalty imposed is designed not to punish but, rather, to compensate the injured private party or coerce compliance with the court's mandate or both. .. . Unlike civil contempt, the aim in a criminal contempt proceeding is solely to punish the contemnor for disobeying a court order, the penalty imposed being punitive rather than compensatory. [519 N.Y.S.2d at 542, 513 N.E.2d at 709]
As was recently expressed by our Supreme Court in discussing the strands of the contempt doctrine, "the labels that jurisdictions may place on the exercise of judicial power to punish are not significant. It is the substance that determines the outcome. `Civil contempt proceedings are primarily coercive; criminal contempt proceedings are punitive.'" Matter of Daniels, 118 N.J. 51, 59, 570 A.2d 416 (1990). See also N.J. Dept. of Health v. Roselle, 34 N.J. 331, 342, 169 A.2d 153 (1961); United States v. Spectro Foods Corp., 544 F.2d 1175, 1182 (3 Cir.1976). "One important indication of which contempt strand applies ... is the type of sentence imposed. Civil sanction requires incarceration only until compliance with a court order, whereas criminal sanction requires a fixed term." Daniels, supra 118 N.J. at 60, 570 A.2d 416.
*707 The court in New York did not impose incarceration,[5] nor did it impose a monetary sanction for past derelictions. The purpose of the sanction was not "to punish an offense against the public justice" of the state, see City of Philadelphia v. Smith, 169 N.J. Super. 156, 164, 404 A.2d 360 (App.Div. 1979), aff'd 82 N.J. 429, 413 A.2d 952 (1980), but rather "to motivate timely payment." Ibid. Its purpose was neither reparation to one aggrieved, nor vindication of the public justice; rather, it was intended to be coercive, to induce defendants to post the bond which the court had previously decreed be posted. Cf. Matter of Kimber Petroleum Corp., 110 N.J. 69, 78, 539 A.2d 1181 (1988), cert. den. 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988). Further, the fines imposed were prospective only. Had retroactive fines been imposed, a different issue would be presented. In Daniels, supra, the Court noted that the defendants there involved carried the "keys to the prison" in their pocket; by analogy, in this case no monetary sanction would have resulted had defendants proceeded expeditiously to post a bond.[6] 118 N.J. at 11-12, 570 A.2d 416. See also Spectro Foods, supra, 544 F.2d at 1182; Markle v. Local Union No. 641 of Intern. Broth. of Teamsters, 131 N.J. Eq. 202, 24 A.2d 364 (E. & A. 1942).
Courts have inherent authority to enforce their decrees. To decline to recognize New York's judgements would permit defendants to avoid their judicially determined obligation to post a bond; such a result would be "unconscionably frustrating," Ruiz v. Lloses, 233 N.J. Super. 608, 611, 559 A.2d 866 (App.Div. 1989), would be antithetical to the interests of New York and New Jersey, and would tend to detract from the *708 constitutional objective of integrating the states into a single nation.
The fines imposed are not within the penal exception and the New York judgements are entitled to full faith and credit.
NOTES
[1] Dart has not contended that the manner of its involvement creates any jurisdictional concern or gives rise to any due process consideration.
[2] I am informed that defendants herein filed a belated appeal which was dismissed as out of time. Barone and Khourouzian did appeal. Preliminarily, they secured a stay of the bond requirement pending disposition of the appeal, which stay specifically applied only to themselves. The Appellate Division and Court of Appeals affirmed the bond requirement. State v. Barone, 547 N.Y.S.2d 269, 74 N.Y.2d 332, 546 N.E.2d 398 (Ct.App. 1989).
[3] Although the relevant considerations probably support recognition on the basis of comity, see Philadelphia v. Austin, 86 N.J. 55, 63-66, 429 A.2d 568 (1981), plaintiffs have not argued for application of comity and defendants have not had opportunity to present opposition; hence, it would be inappropriate to decide this case on that basis without further argument. See Cohen v. Home Ins. Co., 230 N.J. Super. 72, 81, 552 A.2d 654 (App.Div. 1989).
[4] Although the order to show cause did not specifically refer to § 753, the court's findings track the language of that section rather than New York's criminal contempt statute, § 750. The label is, in any event, of limited pertinence.
[5] The fact that a prison term could have been imposed is not relevant. Austin, supra, 86 N.J. at 63, 429 A.2d 568.
[6] Defendants do not in any fashion suggest that they did not have the ability to post the bond decreed.