AUGUST STREITWOLF, defendant and appellant,

*v.*

ELIZABETH STREITWOLF, complainant and respondent.

| 58 | 563 |
|----|-----|
| 60 | 23 |
| 60 | 24 |
| 60 | 30 |
| 58 | 563 |
| 61 | 308 |
| 58 | 563 |
| 63 | 785 |

[Argued March Term, 1899.   Decided and Filed June 19th, 1899.]

A decree of divorce obtained in another state upon a false allegation of domicile therein, will be treated as void here on the ground of fraud.

---

On appeal from a decree advised by Vice-Chancellor Pitney, who delivered the following opinion:

I think I need not hear further argument at this time. I have had occasion to examine the question involved, in the recent case of *Felt* v. *Felt, 12 Dick. Ch. Rep. 101,* now before the court of errors and appeals, and have had occasion to think of it.

The object of this supplemental bill is to obtain a decree of the court declaring void a decree of absolute divorce obtained by the defendant against his wife in one of the courts of the State of North Dakota after the filing of the original bill in this cause. The issue raised on this supplemental bill was, by consent of counsel, tried and submitted before the hearing upon the original bill.

The circumstances of this case are these: Mr. and Mrs. Streitwolf were domiciled for many years in New Brunswick, New Jersey. Mr. Streitwolf was in business and owned a house and lot there, which he still owns and rents out. In the early part of August, 1896, his wife left him; the parties separated. On the 17th of August of the same year she filed a bill against him for a divorce from bed and board on the ground of cruelty, and obtained an order for alimony *pendente lite* against him.

In November of that year he sold out his business in New Brunswick, but rented the building and furniture to the grantee of the business, and went to New York, and boarded there at a particular place for awhile, and then went to Europe on a pleasure tour, and spent the winter in Egypt and the Mediterranean. He returned to New York in March of the following year and remained there until May 5th, 1897.

In the month of April, 1897, negotiations were going on between him and his wife as to a settlement of their difficulties, which produced no results. That the negotiations had entirely failed was manifest a few days before the 1st of May, as I understand Mr. Streitwolf's evidence.

About that time he became acquainted with a firm of lawyers, Hoggatt & Caruthers, who had an office in New York and another in Mandan, North Dakota. They were attorneys who he learned were engaged in the business of procuring divorces, and he talked with them, as I understand his evidence, and

found that they had an office and representative in Mandan, North Dakota. Mr. Streitwolf had never been in Mandan; he knew nobody there, had no connections directly or indirectly with Mandan, or with anybody in North Dakota—he was a perfect stranger to Dakota, both he and all his family.

On the 6th of May, 1897, without informing anybody where he was going, or that he intended to change his residence—that he intended to leave New York or New Jersey, or anything of the kind—he left secretly, you may say, on his own confession, and went to Mandan; arrived there on Sunday morning, the 9th of May. On the afternoon of the same day he was introduced by a traveling companion to Mr. Voss, who represented Hoggatt & Caruthers in Mandan. He took board at a boarding-house and stopped there a few weeks and then went to the Yellowstone Park. He wrote nobody at all that he was at Mandan, dated no letters there, and gave no notice to anybody of his residence there. But while in the Yellowstone Park he wrote to his son that he was taking a trip through that country; and I think there is some evidence from which a jury might infer that he gave it out when he left New York that he was simply going on a pleasure trip.

In July he came back to New York and was there a week or more. He stopped on the way in Minnesota, at a meeting of the society of the Elks, and then came on to New York and sought and obtained an interview with his son, who was then living with his mother in Jersey City and working in New York City, and in that interview stated that he was going to Germany to get a legacy that had been left to him, and invited his son to go with him, and his son promised to give him an answer on a certain evening—the 30th of July, I think. The son went to the rendezvous on that evening, and his father was not there. He hunted around and found he had been out riding, or something of that kind. At any rate, about that time Mr. Streitwolf went to Mandan, and his son or any other persons, as far as appears, had not the slightest idea that he had been away from home with a view to changing his residence, or adopting a new home, or going into business in some other place. He arrived in

Mandan in August. On the 9th of August, three·months from the day he first arrived there, he commenced a suit against his wife for divorce, and took measures to have the papers served upon her in New Jersey.

Now here is a state of circumstances that did not appear in *Felt* v. *Felt*. It did not appear affirmatively there that the original domicile of Felt and.his wife was in New Jersey or New York. It did not appear in that case but that the original domicile of the husband was Utah, where the divorce was granted. But here the original domicile was in New Jersey, and the burden is on the husband to establish the domicile in North Dakota.

Now, he procured a notice, &c., to be served on his wife, and about the time he supposed they might be served wrote this long letter dated August 11th, 1897, to his son, in which he says :

"I suppose you have thought my action and conduct towards you a little strange in some ways of late. Well, my dear boy, the time has come when this explains itself."

As soon as the papers in the Dakota suit were served on the wife she applied to the chancellor for an injunction against her husband proceeding with that Dakota suit, and the chancellor granted an injunction, which is dated September 8th. It was sent to Mandan to be served—put in the hands of the sheriff for service—and on the day it was so put in the sheriff's hands Mr. Streitwolf left Mandan and went east to the Mississippi lakes fishing, and was gone, as I recollect the evidence, until a short time before his suit was set for trial, which was an early day in October, as I recollect the evidence, so that there could be no service of the injunction on him personally. It was brought to the knowledge of his counsel, Mr. Voss, and his counsel in New York, and his counsel here; but Mr. Streitwolf swears that he did not know of it until the trial in court. That means that · his counsel concealed it from him, if what he has sworn to is true. It cannot be put on any other ground. I should be very much surprised if Mr. Voorhees should state in court that he

had not given notice of it to somebody so that it would reach his client.

Mr. Streitwolf obtained his divorce in North Dakota, and the question is whether he was a *bona fide* domiciled resident there for three months, or a reasonable time, before that decree was obtained. I do not think that there is any particular charm in three months or any other length of time. In Utah it required a year's residence, and it was admitted in *Felt* v. *Felt* that Felt was a *bona fide* domiciled resident of Utah for over a year.

If there was a *bona fide* domiciled residence in the State of North Dakota—if Streitwolf went there as any man would go, entirely independent of the question of a desire to get a divorce; if his going there and his adoption of a domicile was thorough and actual—the mere fact that he expected to have the benefit of the laws of the state for a divorce against his wife may not destroy the value of that domicile for present purposes.

But the fact that he did not go there for that purpose has an effect upon the human mind in determining whether or not, upon all the facts, his residence was *bona fide* so as to establish a domicile or not, and that is the very point in the case.

Now, there is no proof that he went into solid, substantial business there. Something was said about his contract with some man who kept a saloon to be a partner or something of that kind. No details were gone into. The landlord, with whom he stayed, swore that Streitwolf's business was that of soliciting life insurance. He had no business there. I think that whatever business, or whatever hint of business, there may be, is so thin that it makes against rather than for him.

Immediately after he obtained his divorce he was taken sick. He went to Europe soon after, and then this supplemental bill, to be relieved from the effect of that decree, was filed on the 11th of January, 1898; and the notice of that reached him at a sanitarium in the Austrian Alps, and he came home and attended to his business in New York and New Jersey, and from there again went to North Dakota and stayed there during this last summer.

I think that while that evidence of subsequent conduct was

admitted, it can have very little effect on the case, because it was his policy, when he found that his divorce was attacked, to make the best of it by his subsequent conduct.

But it does not appear yet that he had any motive to go there, or anybody to see there, except to get this divorce, and it is to be observed that it was necessary for him to get a divorce quickly. It was necessary for him to have this decree in order to defend the action brought by his wife against him in this state. When he found that he could not settle with her, he went to North Dakota post-haste and commenced his suit there, just ninety days from the very Sunday that he arrived there.

Now, without going into the authorities, and speaking from my recollection of the law as laid down by the most respectable courts, it seems to me that it would be a reproach to the administration of justice to hold that by such a visit under such circumstances he acquired a *bona fide* domicile in that state, which, as we all know, is notorious as a resort for people seeking divorces.

Therefore, I hold that the evidence satisfies me that there was no *bona fide* domicile in North Dakota, and that the obtaining of a divorce on the ground of domicile was a fraud on the court, and entitles the complainant herein to a decree that it shall not constitute a defence to her suit.

I think this result is clearly within the ruling of the court of errors and appeals in *Magowan* v. *Magowan*, reversing this court as reported in *12 Dick. Ch. Rep. 322*. There the defendant appeared to the suit.

It is a serious question whether a service out of the jurisdiction can ever be the ground of a decree of divorce, and the only ground upon which it can safely be put is that of necessity, viz., that the party cannot get his rights without such service. That is the ground upon which I put it in the *Felt Case*. But according to the *Magowan Case*, as decided by the court of errors and appeals, as I understand it, if the complainant in this cause, Mrs. Streitwolf, had appeared to the Dakota suit, it would not have prevented her from setting up here that there had been fraud practiced upon the court in the matter of domicile.

I am quite clear that this decree cannot prevail, and that conclusion renders it unnecessary to determine the question of a breach of the injunction.

I think it worth while to add one more observation. Upon looking at the North Dakota decree it appears that the plaintiff in that suit, the defendant here, put his case there on two grounds—one extreme cruelty of his wife practiced upon him, and the other on the ground of her adultery. A faint effort was made by a witness who was examined in New Jersey to prove the adultery, and it was that effort which I presume was the cause of the son's publishing the article in the newspaper which was put in evidence herein; but the proof failed, and the Dakota decree is based on cruelty of the wife practiced upon the husband. Now, it is to be observed that either the adultery or the cruelty, if proven, was a complete defence to the action brought by the wife against the husband in this state, but the cruelty was not a ground here for an absolute divorce.

I will advise a decree declaring the North Dakota divorce void, and will take up the further hearing of the cause at such time as may be fixed.

*Mr. Willard P. Voorhees,* for the appellant.

*Messrs. Alan H. & Theodore Strong,* for the respondent.

PER CURIAM.

Decree unanimously affirmed, for the reasons given in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH—13.

*For reversal*—None.