Docket 62/538

GRACE ISSERMAN, complainant,

*v.*

ABRAHAM ISSERMAN, defendant.

[Decided May 16th, 1945.]

*Mr. Michael G. Alenick,* for the complainant.

*Mr. Milton M. Unger,* for the defendant.

HERR, A. M.

Complainant secured a decree for separate maintenance in this cause in the year 1927, under which (as modified by the latest of several subsequent orders) defendant for several years paid her a weekly allowance of $45 for her support and for the support and education of an infant son of the marriage in her custody, who is now nineteen years of age and is serving in the armed forces of the United States.

In February, 1943, defendant became a resident of the State of Nevada and in November of that year instituted a suit for absolute divorce against complainant in the courts of that state on the ground that the parties had lived apart, consecutively and continuously, without cohabitation, ever since July 28th, 1926.

This statutory ground for divorce in Nevada is in furtherance of the public policy of that state that when a husband and wife have lived apart from each other for a continuous and uninterrupted period of three years or more and there is no likelihood of their ever resuming conjugal relations, the best interests of society in general as well as of the parties themselves will be promoted by a dissolution of the marriage. The operation of the statute depends not upon the commission of a matrimonial offense or upon the comparative rectitude of the parties but upon the improbability of a reconciliation. A divorce may be granted on that ground at the suit of either party, without regard to any marital *delictum* on the part of either. Such a decree may be granted to a petitioner who has been adjudged guilty of a matrimonial offense although the defendant may be innocent of all fault. Hence the decree may consistently provide alimony for the wife whether the divorce be granted upon her prayer or upon the prayer of her

husband. *Herrick* v. *Herrick,* 55 *Nev.* 59; 25 *Pac. Rep.* (2d) 378; *George* v. *George,* 56 *Nev.* 12; 41 *Pac. Rep.* (2d) 1059; 97 *A. L. R.* 983. Similar statutes have been adopted in other states. See Annotations: 51 *A. L. R.* 763; 97 *A. L. R.* 985; 111 *A. L. R.* 867; 27 *C. J. S., Divorce,* 943, § 229.

The complainant engaged Nevada counsel and was personally present during the proceedings in the Nevada court. She filed an answer in the cause denying defendant's allegation that he was domiciled in Nevada and a cross-complaint for divorce on the ground of adultery. Her inconsistency in both challenging and invoking the jurisdiction of the court was afterwards cured by the amendment of her answer so as to eliminate her prior contention that defendant was not domiciled in Nevada, leaving him to his proof. Her cross-complaint was also amended by abandoning the adultery charge and substituting for it the same ground upon which defendant's complaint was based.

In her amended cross-complaint complainant prayed "1. That she be granted a decree of absolute divorce forever dissolving the bonds of matrimony now and heretofore existing between her and the plaintiff. 2. That she be awarded the custody of the minor child, Harold A. Isserman, until his majority. 3. That all of the terms and conditions and guarantees made by stipulation of counsel herein in open court in the above entitled action be ratified, approved and confirmed by this court and the terms and conditions thereof ordered performed; that said stipulation is a part of the record and proceedings in this action and by more particular reference thereto is hereby made a part hereof," followed by a general prayer.

The case came on for trial in open court in the presence of the parties and their attorneys. Testimony was taken on defendant's part to sustain his contention that he was domiciled in Nevada. It was conceded by the parties that they had lived apart, consecutively and continuously, without cohabitation, for a period of upwards of three years, and the court was fully apprised of the circumstances and result of the New Jersey litigation.

A final decree for absolute divorce was entered on December 4th, 1943. It included a provision for the payment of a lump sum of $5,000 to complainant ($3,000 in cash within five days after the entry of the decree, and $2,000 at a later date for which a promissory note was to be delivered to complainant with the cash payment), together with alimony and maintenance for herself and their son Harold at the rate of $45 per week to be reduced to $30 per week upon Harold's attaining the age of eighteen or upon his earlier induction into the armed forces of the United States, and to cease entirely and permanently five years after the date of entry of the decree or upon complainant's earlier death or remarriage. These provisions were based upon the stipulation referred to in complainant's prayer above quoted, which was approved by the court without inquiry into the circumstances of the parties.

Within five days after the entry of the decree the defendant delivered the cash and note to complainant's Nevada solicitor, and made the payments of $45 per week until June 14th, 1944, when Harold became eighteen years of age. Since that date defendant has sent to complainant weekly checks of $30 each. Complainant declined to accept the cash and note from her Nevada attorney, but they have not been returned to the defendant. The proof is that they are now held for the complainant by the clerk of the Nevada court. She accepted the weekly payments of $45 each as due her under the New Jersey decree and has cashed the subsequent $30 weekly checks, except for a few upon which reference to the Nevada decree was endorsed. Both parties have been careful since the entry of that decree to take no action inconsistent with what they maintain to be their respective rights.

The Nevada decree contained no reservation with respect to the subsequent modification of its alimony and maintenance provisions in the event of changed circumstances. On the contrary it contained a clause exonerating defendant from all future obligation to complainant and to the child beyond that expressly provided by its terms. Nor did the stipulation upon which the decree was based contain any provision for modification. As to the decree of this court and the orders sub-

sequently entered herein, the Nevada decree provides: "It is further Ordered, Adjudged and Decreed that the provisions herein made in this decree as to all property rights, the right of the Defendant to alimony and separate support and maintenance, and all other rights arising out of the marital relation, be, and the same are, in the place and in the stead of, any and all provisions made for said Defendant in that certain action in New Jersey entitled 'In Chancery of New Jersey (Docket 62/538) Between Grace Isserman, Complainant, and Abraham Isserman, Defendant;' that all obligations of the Plaintiff to make any payments under said decree of said Court of Chancery of New Jersey be, and the same is (sic) hereby, terminated; that this decree completely supersedes and makes null and void said decree of said Court of Chancery of New Jersey, and said decree of said Court of Chancery of New Jersey is hereby abrogated and henceforth null and void."

Defendant's present application is for an order "that the final decree herein be modified and that such modified decree provide for the dismissal of the bill of complaint in this cause" and "that all orders in this cause for the support of complainant herein and said child, be vacated." Complainant resists on the ground that the Nevada decree was procured by the defendant's fraud, that the Nevada court lacked jurisdiction and that it had "no legal right to vitiate, alter or affect the decree" entered in this cause. She insists that defendant was not domiciled in the State of Nevada, that he was guilty of fraud in pretending that he was so domiciled and that he fraudulently conspired with the lawyers on both sides to prevent complainant from presenting evidence that defendant's domicile was still in New Jersey, from testifying at the hearing as to defendant's alleged matrimonial offenses and as to his faculties and the needs of herself and the child, and to secure a stipulation as to the alimony and maintenance which was against her interest and lacking her free consent. She argues that the decree was the result of such fraud and is therefore void, and moves for an affirmative adjudication to that effect.

The Nevada decree is regular on its face. Complainant

does not contend that the court which granted it lacked general jurisdiction to decree divorce or that it lacked personal jurisdiction over the parties. The decree is therefore immune to collateral attack except upon competent and satisfactory proof that the Nevada court was without jurisdiction over the subject-matter of the particular suit. *Bell* v. *Bell,* 181 *U. S.* 175; 21 *S. Ct.* 551; 45 *L. Ed.* 804; *Streitwolf* v. *Streitwolf,* 58 *N. J. Eq.* 563; 41 *Atl. Rep.* 876; 43 *Atl. Rep.* 683; 78 *Am. St. Rep.* 630; *affirmed,* 181 *U. S.* 179; 21 *S. Ct.* 553; 45 *L. Ed.* 807; *Sprague* v. *Sprague,* 131 *N. J. Eq.* 104; 23 *Atl. Rep.* (*2d*) 810; *Wolff* v. *Wolff,* 134 *N. J. Eq.* 8; 34 *Atl. Rep.* (*2d*) 150. Complainant insists that jurisdiction over the subject-matter was lacking in two respects, viz., that defendant was not in fact domiciled in Nevada, and that such fraud was practiced by the defendant as to render the decree lacking in due process.

A careful reading of the proofs fails to disclose any factual basis for the contention that defendant lacked a domicile in Nevada. On the contrary they indicate that he was in fact domiciled there as he claimed to be and as the court held him to be. Complainant constructively conceded this to be true by seeking and securing affirmative relief which that court would have been without jurisdiction to grant had defendant not been domiciled in Nevada. She is therefore estopped to assert the contrary. *Kirrigan* v. *Kirrigan,* 15 *N. J. Eq.* 146; *Horowitz* v. *Horowitz* (*R. I.*), 192 *Atl. Rep.* 796; *Gilbert* v. *Gilbert,* 83 *Ohio St.* 265; 94 *N. E. Rep.* 421; 35 *L. R. A.* (*N. S.*) 521; Annotations: 109 *A. L. R.* 1018; 122 *A. L. R.* 1321; 140 *A. L. R.* 914.

Hence it is unnecessary to determine whether complainant is also barred on the ground that the Nevada decree is *res judicata* as to the question of defendant's domicile, under the rule laid down in *Davis* v. *Davis,* 305 *U. S.* 32; 59 *S. Ct.* 3; 83 *L. Ed.* 26; 118 *A. L. R.* 1518. See *Sleeper* v. *Sleeper,* 129 *N. J. Eq.* 94, 99; 18 *Atl. Rep.* (*2d*) 1.

Aside from the question of defendant's domicile the frauds charged by complainant are not of such a nature as to subject the Nevada decree to review in this or any other court save in the court which rendered it or by direct review thereof.

Assuming them to be true they do not constitute extrinsic fraud. The jurisdiction of the court was in nowise impaired. The essential facts were fully disclosed. Under such circumstances, if there was fraud as charged it concerned the subject-matter of the litigation and was intrinsic therein. It affected the manner of presentation of the case or defense rather than the integrity of the court's jurisdiction to determine the issues. This is not such fraud as renders the decree void, rather than voidable. It is only where the fraud is such as results in the erroneous assumption or repudiation of jurisdiction or in the denial of due process, either substantive or procedural, that the resulting decree is left unprotected by the full faith and credit clause (article IV, section 1) of the federal constitution. See *Nichols* v. *Nichols,* 25 *N. J. Eq.* 60; *Davis* v. *Headley,* 22 *N. J. Eq.* 115, 124; *Wilson* v. *Anthony,* 72 *N. J. Eq.* 836, 840; 66 *Atl. Rep.* 907; *affirmed,* 75 *N. J. Eq.* 299; 78 *Atl. Rep.* 1135; *Smith* v. *Swart,* 103 *N. J. Law* 150; 134 *Atl. Rep.* 755; *Dringer* v. *Receiver, Erie Railroad,* 42 *N. J. Eq.* 573, 580; 8 *Atl. Rep.* 811; *affirmed,* 43 *N. J. Eq.* 701; 13 *Atl. Rep.* 664; *Goodman* v. *Goodman,* 15 *N. J. Mis. R.* 716; 194 *Atl. Rep.* 866; *Wolff* v. *Wolff,* 134 *N. J. Eq.* 8; 34 *Atl. Rep.* (2d) 150; *Abbott* v. *Aetna Casualty and Surety Co.,* 42 *Fed. Supp.* 793; *Mahoney* v. *State Insurance Co.,* 133 *Iowa* 570; 110 *N. W. Rep.* 1041; 9 *L. R. A.* (*N. S.*) 490; 31 *Am. Jur., "Judgments,"* 191, § 595; Annotations: 32 *L. R. A.* (*N. S.*) 905; 88 *A. L. R.* 1201; 2 *Beale, Conf. of Laws* (1935) 1401; *Goodrich, Conf. of Laws* (*Hornbook*) 461; 15 *Words and Phrases* (*Perm. Ed.*) 901.

Complainant contends that the alimony and maintenance provisions of the Nevada decree, in so far as they contain arbitrary limitations upon defendant's future obligation to support his wife and son, are invalid as essentially inconsistent with the separate maintenance decree, 'and should therefore be disregarded because violative of the full faith and credit clause (article IV, section 1) of the federal constitution.

Whatever the *res judicata* effect of the separate maintenance decree may have been (if any), complainant is estopped to

assert it here, not only for the reason that she asked for and received support under the Nevada decree (see 31 *C. J. S., Estoppel* 384, § 119) but because she did not properly assert and prove it in the Nevada proceeding. Even had she done so her remedy would have been by appeal rather than by a collateral attack, since the error, if any, was not jurisdictional. *Wisconsin* v. *Pelican Insurance Company of New York*, 127 *U. S.* 265, 291; 8 *S. Ct.* 1370; 32 *L. Ed.* 239, 243; *Andrews* v. *Andrews*, 188 *U. S.* 14, 36; 23 *S. Ct.* 237; 47 *L. Ed.* 366, 371; *Anglo-American Provision Co.* v. *Davis Provision Co.*, 191 *U. S.* 371; 24 *S. Ct.* 92; 48 *L. Ed.* 225.

Moreover, the separate maintenance decree, so far as complainant's support was concerned, was designed to make provision for her only so long as the parties remained apart and were still husband and wife. The alimony provision of the divorce decree was in substitution for that made by the separate maintenance decree, and superseded and so terminated it. *Bassett* v. *Bassett* (*D. C., Nev.*), 51 *Fed. Supp.* 545; *Turkus* v. *Turkus*, 180 *Misc.* 857; 45 *N. Y. Supp.* (*2d*) 803; 42 *C. J. S., Husband and Wife*, 207, 208, § 612; *Cf. Schimek* v. *Schimek*, 109 *N. J. Eq.* 395; 157 *Atl. Rep.* 649; *Bowers* v. *Bowers*, 132 *N. J. Eq.* 431; 28 *Atl. Rep.* (*2d*) 515. Since the Nevada court had jurisdiction to decree the divorce and since both parties were before it, its jurisdiction included the matter of alimony as an incident. In this respect the Nevada statute is similar to our own. *Nev. Comp. Laws*, § 9463, as amended by Stats. 1943, ch. 91. In fixing alimony it did so, quite properly, in accordance with its own law and usage, not that of New Jersey. Upon the entry of the Nevada decree, our decree therefore ceased to have any *res judicata* effect so far as complainant's support is concerned, even without the pronouncement of the Nevada decree to that effect. Complainant is therefore concluded by the Nevada decree, not only with respect to the divorce but with respect to the alimony provision with its limitation.

Under the law of Nevada that decree is final, conclusive and unchangeable. It contained no reservation for modification, nor did the stipulation upon which it was based contain such a reservation. *Lewis* v. *Lewis*, 53 *Nev.* 398; 2 *Pac.*

Rep. (2d) 131; *Aseltine* v. *Second Judicial District Court,* 57 *Nev.* 269; 62 *Pac. Rep.* (2d) 701. Under these circumstances, by the law of Nevada, the court's power to modify the decree was limited to the period of six months immediately succeeding the date of its entry. *Sweeney* v. *Sweeney,* 42 *Nev.* 431, 432; 179 *Pac. Rep.* 638; *Groves* v. *First Judicial District Court,* 61 *Nev.* 269; 125 *Pac. Rep.* (2d) 723; *Jones* v. *Second Judicial District Court,* 59 *Nev.* 460; 96 *Pac. Rep.* (2d) 1096; rehearing denied, 59 *Nev.* 460; 98 *Pac. Rep.* (2d) 342; *Lauer* v. *Eighth Judicial District Court* (*Nev.*), 140 *Pac. Rep.* (2d) 953; see *Helvering* v. *Fuller,* 310 *U. S.* 69; 60 *S. Ct.* 784; 84 *L. Ed.* 1084. And in this case even that six months' moritorium was waived. It matters not that no evidence was adduced respecting the present or future needs of complainant or the financial ability of defendant, or that no actual adjudication was made, the decree having been based wholly upon the stipulation. Nor does it matter that its provisions were designed to effect the complete termination of defendant's obligation at a certain future date, arbitrarily and without regard to what the future needs of complainant might be. Under Nevada law the finality of the decree will not be affected by the subsequent destitution of complainant or by any other equitable considerations.

Article IV, section 1 of the federal constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State," and that "Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the effect thereof." And Congress has enacted that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." Act of May 26th, 1790, chapter 11, 1 *Stat.* 122, as amended, 28 *U. S. C. A.,* § 687. Congress has thus distinguished between the extraterritorial effect of judgments and that of local or statutory law as such. See *Williams* v. *North Carolina,* 317 *U. S.* 287, 294, 296; 63 *S. Ct.* 207; 87 *L. Ed.* 283, 284; 143 *A. L. R.* 1273. The

United States Supreme Court has from the beginning held that the Act of May 26th, 1790, chapter 11, has made that which has been adjudicated in one state *res judicata* to the same extent in every other. *Magnolia Petroleum Co.* v. *Hunt,* 320 *U. S.* 430; 64 *S. Ct.* 208; 88 *L. Ed.* 149; 150 *A. L. R.* 413; rehearing denied, 321 *U. S.* 801; 64 *S. Ct.* 483; 88 *L. Ed.* 1088; *Sistare* v. *Sistare,* 218 *U. S.* 1; 54 *L. Ed.* 905; 30 *S. Ct.* 682; *Yarborough* v. *Yarborough,* 290 *U. S.* 202, 207; 54 *S. Ct.* 181; 78 *L. Ed.* 269; 90 *A. L. R.* 924; *Gilbert* v. *Gilbert,* 83 *Ohio St.* 265; 94 *N. E. Rep.* 421; 35 *L. R. A.* (*N. S.*) 521; *Barber* v. *Barber,* 323 *U. S.* 77; 65 *S. Ct.* 137; 89 *L. Ed.* ——. So far as complainant's support is concerned the effect of the Nevada decree is to override the public policy of New Jersey and to impose upon this state the public policy of Nevada, in spite of the fact that complainant is and always has been domiciled in this state and may become a public charge. The defendant's civil obligation toward her cannot be extended beyond the terms of the Nevada decree.

But that decree did not affect defendant's obligation to maintain, support and educate his son Harold. Harold was not domiciled in Nevada. Because of the defendant's abandonment of him (as was adjudged by the separate maintenance decree) and because of the provision of that decree granting his custody to the complainant, his domicile has been and is that of his mother, in New Jersey. *In re Williams,* 77 *N. J. Eq.* 478; 77 *Atl. Rep.* 350; 79 *Atl. Rep.* 686; *Zinsser* v. *Zinsser,* 92 *N. J. Eq.* 491; 113 *Atl. Rep.* 520; Annotation: 53 *A. L. R.* 1160. Nor was Harold physically present in Nevada. Under such circumstances the Nevada court was without jurisdiction to make provision for his maintenance to the extent of diminishing or restircting such provision as has been or may be made for him by this court. See *Schneider* v. *Schneider,* 78 *U. S.* (*App., D. C.*) 383; 141 *Fed. Rep.* (*2d*) 542, distinguishing *Yarborough* v. *Yarborough, supra; Boens* v. *Bennett,* 20 *Cal. App.* (*2d*) 477; 67 *Pac. Rep.* (*2d*) 715; *Long* v. *Long,* 239 *Ala.* 156; 194 *So. Rep.* 190; *Weber* v. *Redding,* 200 *Ind.* 448; 163 *N. E. Rep.* 269; *Payton* v. *Payton,* 29 *N. M.* 618; 225 *Pac. Rep.*

576; *Sanders* v. *Sanders,* 223 *Mo. App.* 834; 14 *S. W. Rep.* (*2d*) 458; *Hachez* v. *Hachez,* 124 *N. J. Eq.* 442; 1 *Atl. Rep.* (*2d*) 845; *Goodman* v. *Goodman,* 15 *N. J. Mis. R.* 716; 194 *Atl. Rep.* 866; *Levy* v. *Levy,* 17 *N. J. Mis. R.* 324; 9 *Atl. Rep.* (*2d*) 779.

The child is a ward of this court by virtue of the separate maintenance decree and of his continued domicile and residence in this state. He may again require some contribution from his father before he attains his majority. If so, under our law, he will be entitled to it. An order will be advised that the allowance provided by the decree and subsequent orders herein be abated prospectively from the date of entry of the Nevada decree. The decree will not be vacated, however, nor the bill dismissed at this time. They will be held to the end that application may be made on Harold's behalf for further allowances if the occasion should arise. After he attains his majority the defendant may renew his motion to dismiss the bill.