ALVIN LANDIS, PLAINTIFF-APPELLANT, v. NEIL H. KOLSKY,
DEFENDANT-RESPONDENT.

NEIL H. KOLSKY, PLAINTIFF, v. ELLEN KOLSKY,
DEFENDANT.

Argued September 24, 1979—Decided December 6, 1979.

Mr. *Howard Stern* argued the cause for appellant (*Messrs. Stern, Steiger, Croland & Bornstein,* attorneys).

Mr. *Joel M. Albert* argued the cause for respondent.

The opinion of the court was delivered by

SCHREIBER, J.

The underlying question in this case is whether a California court had *in personam* jurisdiction over defendant, who had had no dealings with the plaintiff in California and who had been served personally in New Jersey, so that its default judgment sued upon here, predicated upon an implied contract, is entitled to full faith and credit under Article IV, § 1 of the United States Constitution.

The California judgment should be viewed against the background of a series of matrimonial proceedings between Ellen Kolsky and her former husband, Dr. Neil Kolsky. The Kolskys, each of whom had previously been married, were married on March 7, 1971 in California. At that time he was in the armed forces and resided in Maryland. After the marriage, they continued to reside in Maryland until coming to New Jersey in June 1971. The parties lived together in Dumont and Hackensack, until their separation three years later. A son David was born in New Jersey on January 25, 1973 and remained in the matrimonial domicile until July 1974. Dr. Kolsky has practiced and continues to practice medicine in this State. Continuing

marital discord led to a final separation in July 1974 when Mrs. Kolsky took her infant son and went to live with her parents in California.

This separation was followed by five separate lawsuits. The first action—which directly concerns this proceeding—was started by Mrs. Kolsky's father, Alvin Landis, in the Superior Court of California. Landis, a California attorney, alleged that Neil Kolsky had deserted and abandoned his wife and child, knowing that they "would necessarily have to move" to California. Mr. Landis also asserted that he had advanced $2,845 to pay for transporting his daughter's household and personal property from Hackensack to California and had expended $2,000 for necessaries to support his daughter and grandson. He sought damages for $4,845 and for additional monetary support afforded after filing the complaint. The Landis action was commenced on November 13, 1974. Service was made by the Deputy Sheriff of Bergen County on Dr. Kolsky at his business address in Fort Lee, New Jersey, on December 30, 1974. Default was entered upon his failure to answer. On February 18, 1975 plaintiff Landis obtained a judgment in the California Superior Court for $6,984. On August 12, 1975 Mr. Landis instituted this proceeding in the Superior Court, Law Division, Bergen County, seeking to obtain a judgment here on the basis of the California judgment.

On December 28, 1974, before he became aware of Landis's California action, Dr. Kolsky had filed a complaint for divorce on the ground of extreme cruelty in the Superior Court of New Jersey. His wife defaulted and judgment of divorce was entered on July 30, 1975. The order recited that the court had jurisdiction over the action and retained jurisdiction over custody and child support. Plaintiff Landis's New Jersey lawsuit was thereafter consolidated with Dr. Kolsky's matrimonial action.

In a fourth proceeding instituted on January 13, 1975 in California, Ellen Kolsky sought a divorce. Dr. Kolsky, served by mail, did not respond. That matter was heard in California on

February 20, 1975, and Mrs. Kolsky was awarded support of $900 per month for the child and $500 per month for herself. The final California divorce decree was entered on July 22, 1975.

A fifth action was commenced in July 1975, when Ellen Kolsky filed a petition in California for support of David and herself under the Uniform Reciprocal Enforcement of Support Act. *N.J.S.A.* 2A:4–30.1 *et seq.* However, the underlying documents only sought support for the child. The Juvenile and Domestic Relations Court in Bergen County, jurisdiction being vested in that court in accordance with the Act, dismissed the proceeding without prejudice in September 1975 because the New Jersey Superior Court that granted the divorce to Dr. Kolsky had retained jurisdiction to decide the question of support for the infant.

Ellen Kolsky also petitioned the California court for leave to revert to her maiden name, which was granted on January 12, 1976. Lastly, in June 1978, she obtained a judgment in California for $56,606 for arrearages allegedly due under the California matrimonial proceedings. At that time she resided in New Mexico.

In this setting we direct our attention to the Landis action in New Jersey to obtain a judgment for the monies due as previously adjudicated by the California Superior Court. When the matter came on for trial, plaintiff Landis's attorney introduced the California judgment and a document entitled Findings of Fact and Conclusions of Law, signed by the California judge who had presided at the uncontested proceedings. The Findings were offered so that the court had something "to look at in order to determine if what was done effects [*sic*] the public policy" of New Jersey. The Findings contained a recitation by the trial judge, tracing the language of plaintiff's California complaint, that defendant Neil Kolsky knew that by reason of his desertion and abandonment his wife "would necessarily have to move" to California.

The parties agreed that the California law governing service of process was the same as New Jersey's, namely that service of the summons and complaint might be made outside the state, provided that such service is "consistent with due process of law." *R.* 4:4–4(e). The trial court also took notice of the fact that Neil Kolsky had obtained a divorce on July 30, 1975 in these consolidated proceedings.

Neil Kolsky was the only witness at the hearing. He testified that his wife left the apartment in which they were residing in Hackensack and went to California in July 1974. Dr. Kolsky stated that he did not make any arrangements for her to go there, although at her request he had agreed to pay the airplane cost if she charged it to his American Express account. He did not, however, pay for her plane fare when Mrs. Kolsky returned in August to gather up some of her belongings and to arrange to ship her automobile.

The only other evidence introduced consisted of letters written by Dr. Kolsky. He referred to some financial matters and stated that he would send $50 per week for their son's support, plus any medical expenses, "until a final disposition re support ha[d] been made." He also enclosed a check for $100. This check, as well as a subsequent one for $200, were returned because Mrs. Kolsky considered the amounts insufficient. He also noted that he had been advised she was attempting to reenter the art field. (Mrs. Kolsky had been a curator in the Baltimore Museum of Art.)

The trial court in a letter opinion reasoned that New Jersey courts had the right to determine whether the California court had jurisdiction over the subject matter and over the person, such jurisdiction being a condition precedent to entitling the California judgment to full faith and credit. However, because the California decree was presumptively valid, defendant had the burden of proving the absence of the jurisdictional element. Without making any factual findings on the basis of the record in the proceedings other than to state that defendant's payment

of his wife's plane fare to California did not constitute a basis for *in personam* jurisdiction, the trial court held defendant had failed to meet his burden of proof. Thereupon it entered judgment in favor of Mr. Landis against Dr. Kolsky in the sum of $7,030 with interest from February 1975 and costs.

The Appellate Division in an unreported opinion reversed. It adverted to the facts that at the time Ellen Kolsky left New Jersey, she had $8,000 in her bank account and was capable of obtaining employment in the art field. It further commented that according to her husband's testimony she had voluntarily selected California as a place to live and concluded that the husband did little more than consent to her choice. Holding that the appeal was governed by a recently decided United States Supreme Court opinion, *Kulko v. Superior Court of California,* 436 *U.S.* 84, 98 *S.Ct.* 1690, 56 *L.Ed.*2d 132 (1978), the Appellate Division concluded that the "minimum contacts" necessary to empower the California courts to exercise personal jurisdiction over Dr. Kolsky were missing. It refused to grant full faith and credit to the California judgment. We granted plaintiff's petition for certification. 79 *N.J.* 492 (1979).

■ The federal constitutional requirement that the "public Acts, Records and Judicial Proceedings" of every state shall be given full faith and credit effectuates the policy that some rules of comity among nations should be elevated to the plane of a constitutional obligation among the states. See *Estin v. Estin,* 334 *U.S.* 541, 545–546, 68 *S.Ct.* 1213, 1216–1217, 92 *L.Ed.* 1561, 1567 (1948). However, a necessary prerequisite to the application of that proposition is that the initial forum have jurisdiction over the subject matter and the person. When the subject matter involved is only the defendant's personal liability for money, full faith and credit must be given to a money judgment in another state, even though the enforcing forum might not recognize the underlying cause of action. *Titus v. Wallick,* 306 *U.S.* 282, 291–292, 59 *S.Ct.* 557, 562, 83 *L.Ed.* 653, 659 (1939). Thus, whether New Jersey would have entertained an action by

Landis for the various alleged expenses of defendant's wife and child on the basis of an implied contract—the theory of the California action—is irrelevant.

■ What is relevant is whether defendant Neil Kolsky had been properly brought within the jurisdiction of the California court by service of process on him in New Jersey. Implicated are notions of due process, for full faith and credit need not be given to a California judgment invalid in California by virtue of being offensive to the due process clause of the Fourteenth Amendment.[1] *Grover & Baker Sewing Machine Co. v. Radcliffe,* 137 *U.S.* 287, 11 *S.Ct.* 92, 34 *L.Ed.* 670 (1890); see also *N.J.S.A.* 2A:82-4. The criteria for resolving whether due process has been denied are found in the seminal opinion of *International Shoe Co. v. Washington,* 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945). There the Supreme Court wrote:

> Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. . . . But now . . ., due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [326 *U.S.* at 316, 66 *S.Ct.* at 158, 90 *L.Ed.* at 101–102]

■ Necessary minimum contacts to exercise jurisdiction would appear to have been satisfied when a nonresident, seeking to avail himself of some benefit within a state, affirmatively acts in a manner which impacts within that state. In *Hanson v. Denckla,* 357 *U.S.* 235, 78 *S.Ct.* 1228, 2 *L.Ed.2d* 1283 (1958), the Supreme Court explained:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails [him] self of the privilege of conducting activities within the

---

[1] Accordingly, a collateral attack is permissible to demonstrate the absence of jurisdiction. *James v. Francesco,* 61 *N.J.* 480 (1972).

forum State . . . . [357 *U.S.* at 253, 78 *S.Ct.* at 1239–1240, 2 *L.Ed.2d* at 1298]2

What minimum contacts may satisfy the jurisdictional requirement depends on the facts and circumstances of each case. *Kulko v. Superior Court of California,* 436 *U.S.* at 92, 98 *S.Ct.* at 1697, 56 *L.Ed.2d* at 141. In reaching its result the Superior Court of California did not rely on Neil Kolsky's temporary presence and marriage in California in 1971. Rather, the California court simply recited that personal service had been made upon defendant in accordance with the California Code of Civil Procedure, Sections 415.10 and 415.40 and implied that therefore it had jurisdiction over defendant. But neither section of the Code advances an analysis of specifically what minimum contacts justified jurisdiction.

Section 415.10 provides that a summons may be served by personal delivery of a copy of the summons and complaint. Section 415.40 states a summons may be served on a person outside this state in the same manner as persons within the state. Thus, these sections of the California Code prescribe no guidelines. The California court has not expressly related the factual basis for holding that due process was respected. At best the factual basis may be inferred from its conclusion that the defendant knew that because of his desertion and the

---

2It has been contended that the requirement of demonstrating that the defendant must purposefully have availed himself of a privilege of conducting activities within the forum state must be literally satisfied. See *Great Western United Corp. v. Kidwell,* 577 *F.2d* 1256, 1288–1289 (5 Cir. 1978) (Godbold, J., dissenting), rev'd on other grounds *sub nom. Leroy v. Great Western United Corp.,* —— *U.S.* ——, 99 *S.Ct.* 2710, 61 *L.Ed.2d* 464 (1979). It has been held, however, that where a commercial or business transaction has significant effects in the forum jurisdiction, due process has been satisfied and that the principle of *Hanson v. Denckla* was essentially that a plaintiff's unilateral action could not create the necessary relationship between the defendant and the forum state. *Product Promotions, Inc. v. Cousteau,* 495 *F.2d* 483 (5 Cir. 1974).

expiration of the lease on the apartment (which terminated July 31 and was extended to September 30) Ellen Kolsky would necessarily have to move to her parents' residence in California.

■ Plaintiff Landis, relying upon that factual finding of the California court, urges that Neil Kolsky's actions produced results in California warranting service by mail in New Jersey. Though the California judgment and the finding of compulsion, if a relevant jurisdictional fact, were presumptively valid and defendant had the burden of proving that there was a lack of jurisdiction, *Anthony v. Wilson,* 74 *N.J.L.* 630, 632 (E. & A. 1907), we agree with the Appellate Division that this burden was met.

Both the trial court and Appellate Division agreed that defendant's payment of his wife's airfare to California was not sufficient to justify "minimum contacts." As the Appellate Division concluded, "[d]efendant Kolsky did little more than acquiesce in his wife's departure to California . . . ." In passing, we observe that Dr. Kolsky was the only witness who testified on this issue. He indicated that the parties were living together in the apartment in Hackensack when his wife decided to go to her parents' home. He stated that he did not make any arrangements for his wife to go to California, although he did agree to pay the plane cost after she had made that decision and had requested he pay. Furthermore, he paid none of the cost for her round trip to New Jersey the next month. There is no justification for rejecting this testimony, particularly in the absence of any finding by the trial court questioning the witness's credibility. *Cf. Ferdinand v. Agricultural Ins. Co.,* 22 *N.J.* 482 (1956). Furthermore, Mrs. Kolsky had previously been employed in the art field and was capable of securing employment. The letter in evidence referred to her forthcoming interviews for positions in her profession. Moreover, plaintiff Landis offered no evidence in refutation, not even his daughter's testimony (her deposition could have been taken either by written questions or orally). Dr. Kolsky's acquiescence in his wife's

desire to live with her parents cannot be said to be equivalent to his having "purposefully availed himself" of the "benefits and protections" of California's laws.

Plaintiff Landis also urges that Dr. Kolsky's action caused an "effect" in California satisfying the minimum contact test. This argument is misplaced, once it is realized that he did not purposefully obtain benefits from activities relating to California and that Ellen Kolsky unilaterally selected California as her new residence. Further, the instant situation is to be distinguished from commercial activities affecting state residents. *Cf. Restatement, Conflict of Laws* 2d, § 37 (1971), and see discussion of the *Restatement* section in *Kulko v. Superior Court of California,* 436 *U.S.* at 96, 98 *S.Ct.* at 1699, 56 *L.Ed.*2d at 144.[3]

Our holding herein is consonant with *Kulko.* In that case, a husband and wife were domiciled in New York when the wife moved to California after a separation. The parties had entered into a separation agreement pursuant to which their two children were to reside with their father and spend vacations with the mother. Eventually, both children were to live with the mother. When the wife sued in California seeking, among other things, full custody of the children and increased support, the husband appeared specially and sought to quash service because of a lack of "minimum contacts" warranting jurisdiction.

The United States Supreme Court agreed that the California court did not have *in personam* jurisdiction. It first held that one who merely acquiesces in a child's desire to live with the mother in another state is not purposefully taking advantage of

---

[3]The *Restatement* section reads:

A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.

the benefits of that state's laws. Nor was the financial benefit the father derived from having his daughter live in California sufficient to establish minimum contacts. His decreased household costs were a result of his daughter's absence from his home, not her presence in California, and a suit for increased support payments could have been brought in New York as well as in California. Nor were the services provided by California to his daughter significant. These were benefits for the child, not the father, and were not purposefully sought by him.

The Supreme Court rejected the argument that the father's action in paying for his daughter's plane fare to California had caused an "effect" in California, thereby establishing jurisdiction. The Court pointed out that even if an "effect" had occurred, reasonable circumstances justifying the exercise of jurisdiction were lacking. No physical injury to person or damage to property had occurred in California. The noncommercial nature of the dispute was deemed significant because one of the main reasons that jurisdictional standards had been relaxed was " 'attributable to the . . . increasing nationalization of commerce . . . [accompanied by] modern transportation and communication [that] have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.' " *McGee v. International Life Ins. Co.*, 355 *U.S.* 220, 222–223, 78 *S.Ct.* 199, 201, 2 *L.Ed.2d* 223, 226 (1957), quoted in *Kulko v. Superior Court of California,* 436 *U.S.* at 101, 98 *S.Ct.* at 1701, 56 *L.Ed.2d* at 147. Finally, basic considerations of fairness were deemed to favor New York as the proper forum. Appellant had remained in New York while his wife moved away; appellant merely acquiesced in permitting his daughter to move to her mother's home.

It would be no fairer for California to assert jurisdiction here than in *Kulko.* This dispute does not arise out of a business transaction. Though plaintiff Landis's claim is predicated on breach of an implied contract, the underlying obligation rests on the duty to support, and amount thereof, owed to his former

wife and child. New Jersey was the state of matrimonial domicile where Dr. Kolsky has remained, whereas his former wife moved across the country. As previously noted, his acquiescence in this move is not one that could reasonably be expected to result "in the substantial financial burden and personal strain of litigating a [contract action rooted in support] . . in a forum 3,000 miles away . . . ." *Kulko v. Superior Court of California,* 436 *U.S.* at 97, 98 *S.Ct.* at 1700, 56 *L.Ed.2d* at 145. Dr. Kolsky has not sought the benefit or protection of California laws or engaged in a purposeful act such as to justify jurisdiction in the California court. Its judgment is not entitled to full faith and credit under the federal constitution.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.