276 N.J. Super. 474 (1994)
648 A.2d 261
DEBORAH JAWOROWSKI, PLAINTIFF-RESPONDENT,
v.
FRANK KUBE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1994.
Decided October 4, 1994.
*475 Before Judges PRESSLER, LANDAU and NEWMAN.
Dina G. Kugel argued the cause for appellant (Lindabury, McCormick & Estabrook, attorneys; Ms. Kugel and Marlene Browne-Berg, on the brief).
Nicholas T. Grosch argued the cause for respondent (Stephen J. Edelstein, Essex County Counsel, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendant Frank Kube appeals from an order of the Chancery Division, Family Part, enforcing a child support order entered against him in Arizona and expressly rejecting his argument that that order is void by reason of Arizona's failure to have obtained personal jurisdiction over him. We affirm.
The jurisdictional facts are largely undisputed. Defendant and plaintiff Deborah Jaworowski were both residents of New Jersey when they met in 1983. Planning to be married, they moved together to Phoenix, Arizona, in February 1985, where they rented *476 an apartment and lived together as husband and wife. Plaintiff was then pregnant with their daughter, who was born in August 1985. With defendant's concurrence, plaintiff registered at the hospital under defendant's name, and the child bears his name as well. The child was also so baptized in April 1986. In June, because of problems between them, plaintiff changed her mind about marrying defendant and returned to New Jersey with the baby and her two other children. Defendant remained in Arizona, plaintiff rejoining him there, however, in August. She has lived in Arizona since. Defendant left Arizona in October 1986, came back in November 1987, and left again the following month. He has resided in New Jersey since. It appears that while he still lived in Arizona, he filed there for unemployment benefits, which he continued to receive after his return to New Jersey.
Although defendant has never denied paternity of the child, he failed to provide support for her. Plaintiff, who had been receiving public assistance, commenced a paternity and support action against defendant in the Arizona Superior Court for Maricopa County in July 1988. Defendant was personally served with process at his home in New Jersey by a Union County sheriff's officer. He consulted with an attorney employed by Union County Legal Services Corporation who wrote to plaintiff's attorney in Arizona advising that defendant acknowledged paternity, recognized his obligation to support the child but was unable to then do so because he was unemployed, asserted his right to visitation, and offered to sign a consent decree.
Although defendant never filed an answer to the complaint or otherwise appeared in the Arizona action, negotiations ensued between the attorneys. Plaintiff had proposed a consent decree providing monthly child support of $400. Defendant, asserting that he was unemployed and living on monthly benefits of $450, offered child support of $175 monthly, to be increased when he again started to work. Plaintiff's attorney rejected the proposal, advising that he had specific information respecting defendant's current employment and that defendant's salary warranted the *477 demanded $400 monthly support level under Arizona's child support guidelines. Defendant's response continued to assert his unemployment, acknowledged that he was receiving weekly benefits of $228 and asked that plaintiff modify her demand based on that benefit level. That was apparently the end of the correspondence. A default judgment was entered in January 1989 fixing child support at $400 per month and requiring defendant to pay the child's incurred medical expenses as well as plaintiff's attorney's fee. Defendant asserts that he was not noticed either of the entry of the default or the entry of the default judgment.
Initiation by plaintiff's Arizona attorney in late 1989 of inquiries in New Jersey respecting enforcement of the judgment in this state were not apparently pursued. Ultimately, the Arizona Attorney General's Office requested the Essex County Probation Department to obtain enforcement pursuant to N.J.S.A. 2A:17-56.18, which extends the income withholding provisions of the New Jersey Support Enforcement Act, N.J.S.A. 2A:17-56.7 to -56.16, to support orders entered by a sister state. The Essex County Probation Office complied with this request and commenced this proceeding by serving a notice of income withholding on defendant's employer. Defendant responded by obtaining an order requiring Probation to show cause why the Arizona judgment should not be vacated on jurisdictional grounds. At the ensuing hearing, the Family Part judge concluded that Arizona had properly exercised long-arm in personam jurisdiction over defendant. He also concluded that because the Arizona judgment was not entered in a proceeding under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), N.J.S.A. 2A:4-30.24 to -30.64, he had no jurisdiction to entertain an application by defendant to modify the terms of the Arizona judgment. While we agree with the first of these determinations, we are nevertheless of the view that defendant is not without the procedural recourse of seeking modification of the Arizona judgment in this state.
We address first the due process issue. It is well-settled that an exercise of long-arm in personam jurisdiction by the forum *478 state by way of substituted service made outside that state will not offend due process if the defendant had such minimal contacts with the forum state so that maintenance of the action there will not offend traditional notions of fair play and substantial justice. See generally International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Lebel v. Everglades Marina, Inc., 115 N.J. 317, 558 A.2d 1252 (1989); Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 508 A.2d 1127 (1986). The United States Supreme Court has expressly considered the question of the adequacy of the contacts to warrant an exercise of long-arm jurisdiction over a noncustodial parent from whom support is sought for children who reside with the custodial parent in the forum state. See Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), on which defendant relies. The principles articulated by Kulko are, of course, binding on us.
As we read Kulko, it reaffirms long-standing due process principles by holding that in order to sustain the forum state's exercise of jurisdiction in a support action, the non-custodial parent's contacts with that state must consist of or be based on conduct by which he purposefully avails himself of the privilege of conducting activities there and of the benefits and protection of its laws. 436 U.S. at 94, 98 S.Ct. at 1698. And see Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Conversely, the requirements of due process will not be met where the non-custodial parent's connection with the forum state is "too attenuated ... to justify imposing upon him the burden and inconvenience of defense...." Kulko, supra, 436 U.S. at 91, 98 S.Ct. at 1696. The Court in Kulko concluded that defendant's contacts with the forum state did not meet this standard. But the facts underlying that conclusion are very different from those before us here.
In Kulko, the parties, then both residents of New York, were married in 1959 while defendant was in military service. The marriage took place in California during defendant's three-day *479 stopover there en route from a military assignment in Texas to a tour of duty in Korea. Plaintiff then returned to New York where defendant joined her after his military service. The parties' two children were born in New York, where the family continued to reside together until 1972 when plaintiff moved to California. The parties were divorced in that year by a Haitian divorce which incorporated their agreement by which defendant, who remained in New York, was to be the custodial parent, the children visiting with their mother in California during school holidays and summers. Eventually each of the children opted to reside in California and when each made that decision, defendant paid for their one-way transportation from New York to California. Plaintiff then commenced an action in California, serving defendant in New York by substituted service, seeking support for the children. As the Court made clear, California's assertion of jurisdiction over defendant was based neither on the fact that the marriage had taken place there nor on defendant's "glancing presence" in California during his military service. 436 U.S. at 92, 98 S.Ct. at 1696-97. Nor did it rest upon defendant's agreement that the children would make extended visits to their mother in California. Rather California predicated its claim of jurisdiction on the fact that defendant, by thereafter sending the children to California to live with their mother and thereby relieving himself of the financial obligation for their support that he had had as the custodial parent, had sufficiently and purposefully availed himself of the benefit and protection of California law to satisfy due process. That conduct, the Court concluded, did not constitute sufficient contact to justify an exercise of long-arm jurisdiction. See also Landis v. Kolsky, 81 N.J. 430, 409 A.2d 276 (1979), holding that neither the fact of the occurrence of the marriage in the forum state nor the acquiesced-in, post-marital return there by one of the spouses constituted by itself or in combination an adequate contact to support an exercise of long-arm jurisdiction.
The contacts of this defendant with the state of Arizona are patently of an entirely different quality and scope than the attenuated *480 and hence insufficient contacts with the forum state by the defendants in both Kulko and Landis. In sum, defendant was a resident of Arizona when the child, whose support is the subject of the action, was born. Because the child was born in Arizona, defendant's obligation of support arose in Arizona. At the time the obligation arose, defendant was, and for some time thereafter continued to be, a resident of Arizona. He sought and received unemployment benefits in Arizona which he presumptively used in part to satisfy that obligation. These contacts are hardly attenuated. They go to the essence of the parental relationship being sought to be vindicated in Arizona. They were patently sufficient to support the exercise of long-arm jurisdiction consistently with due process.
Nor, contrary to defendant's contention, do we find a jurisdictional defect in the asserted fact, even if true, that the default and default judgment were entered in Arizona without notice to defendant contrary to Arizona court rule. That fact may provide defendant with the basis of a direct attack on the judgment in Arizona but not a basis for collateral attack in New Jersey. Since personal jurisdiction over defendant had already been obtained and since no fraud in obtaining the ultimate judgment is alleged, New Jersey is required to accord the judgment full faith and credit, immunizing it here from a claim of procedural irregularity. See generally Zelek v. Brosseau, 47 N.J. Super. 521, 136 A.2d 416 (App.Div.), aff'd o.b., 26 N.J. 501, 141 A.2d 17 (1958); Puzio v. Puzio, 57 N.J. Super. 557, 155 A.2d 115 (App.Div. 1959).
Having concluded that the Arizona judgment of support is entitled to enforcement in New Jersey, we address defendant's contention, not really focused until oral argument, that New Jersey has jurisdiction to entertain his application for modification thereof. At the outset we point out again that the Arizona proceeding was not brought under RURESA. Nor did it have to be, N.J.S.A. 2A:4-30.27 expressly providing that the remedies provided by that Act are "in addition to and not in substitution for any other remedies." At the same time, we recognize that a *481 proceeding brought pursuant to RURESA obviously accords the obligor a substantially greater opportunity for procedural due process in the adjudication of his obligation than is ordinarily available to him by way of an exercise of long-arm jurisdiction by another state. This is so because the scheme of RURESA permits the obligor to submit his responsive proofs in his home state where the quantum of the support obligation, if any, is ultimately determined under that state's substantive law. See N.J.S.A. 2A:4-30.41 to -30.48. And see Rimsans v. Rimsans, 261 N.J. Super. 214, 618 A.2d 854 (App.Div. 1992). Nor is there any question that the support order, as an order of this state, is subject to modification on application of either the obligor or the obligee in the same manner as any other order of support here entered.
The question then is whether a child support order entered by another state is also subject to modification in this state when it is sought to be enforced here. To some extent the answer to that question is provided by RURESA even with respect to judgments and orders not entered under RURESA. That is to say, under the registration provisions of N.J.S.A. 2A:4-30.57 to -30.64, a foreign support order may be registered in this state in the Registry of Foreign Support Orders required to be maintained by the Clerk of the Superior Court. N.J.S.A. 2A:4-30.58. Once registered, the order has the same force, effect and consequence as if initially entered here. N.J.S.A. 2A:30.61. It is, therefore, then not only subject to enforcement but also to modification. See Donelan v. Doherty, 227 N.J. Super. 535, 548 A.2d 199 (App.Div. 1988). The problem, however, is that it is only the obligee under the foreign order and not the obligor who is expressly accorded the right to register. N.J.S.A. 2A:4-30.57. The issue we must decide is whether a foreign order that the obligee seeks to enforce in this state without registering it is subject to registration by the obligor and by that means, subject to his modification application.
Our research has not disclosed any consideration of this question in this or in any other state which has enacted RURESA. *482 We must be guided then by the purpose and policy of the Act and considerations of fundamental fairness. We recognize the impelling legislative motivation for providing as comprehensive a recourse as possible for the vindication of the rights of support that parents owe their children, particularly where, as here, the children and the obligor parent reside in different states. Clearly, resort to long-arm jurisdiction, the foreign-order income withholding provisions of N.J.S.A. 2A:17-56.18, RURESA itself and its registration provisions not only overcome in significant measure the jurisdictional problems otherwise inherent in diversity of residence, but these techniques also provide logistical convenience and hence a realistic due process opportunity to both obligee and obligor. It is only when, as here, enforcement is sought of an unregistered foreign order entered by an exercise of long-arm jurisdiction in proceedings logistically difficult for the obligor to have participated in that the obligor is deprived of a reasonably convenient forum in which to adduce his proofs and seek modification relief. We see, however, no legitimate advancement of the interests involved in the complex of legislative enactments that is gained by depriving the obligor of a reasonable opportunity to be heard. We therefore conclude that considerations of legitimacy and fairness require that the obligor be permitted to register the foreign judgment or order under the Act when its enforcement is sought by the obligee. Accordingly, defendant, if he wishes to pursue his quest for modification, may now do so subject to the retroactivity bar of N.J.S.A. 2A:17-56.23a and subject further to the caveat of Donelan, supra, that the effective date of modification may not precede the date of registration.
We add one final observation. Although we hold that the Arizona support judgment was validly entered, we also recognize the principle that "judgments that are subject to modification in the court where rendered can be open to modification in another jurisdiction in which their enforcement is sought." Restatement (Second) of Judgments, § 82(2) comment b. at 260-261. As further explicated by the Restatement

*483 The principle applicable to such judgments is therefore that of mutual respect, based upon common interest in assuring the stability of judgments. In applying that policy, the same considerations are relevant that apply to judgments entitled to full faith and credit but the recognition court may exercise a wider range of initiative in granting relief.
[Ibid.]
Cf. Hudson v. Hudson, 36 N.J. 549, 558-59, 178 A.2d 202 (1962); Isserman v. Isserman, 23 N.J. Misc. 174, 181-83, 42 A.2d 642 (Ch. 1945), rev'd on other grounds, 138 N.J. Eq. 140, 46 A.2d 799 (E. & A. 1946); Goodman v. Goodman, 15 N.J. Misc. 716, 720, 194 A. 866 (Ch. 1937). We need not further address the applicability here of this principle for several reasons. First, it has not been raised by the parties, and there has consequently been no proof adduced as to the law of Arizona respecting the modifiability of the support order. Beyond that, we are satisfied that according the obligor the opportunity to register a foreign order being sought to be enforced accomplishes the same result and meets the policy considerations raised by the Restatement.
The order appealed from is affirmed.